A05A0690. IN THE INTEREST OF C. R. G., a child.
(611 SE2d 784)

BLACKBURN, Presiding Judge.

Following the termination of her parental rights, appellant, the biological mother of C. R. G., appeals, contending that the evidence was insufficient to support the termination.[1] For the reasons set forth below, we affirm.

On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's

---

[8] *Nichols v. State*, 253 Ga. App. 512, 514 (1) (559 SE2d 538) (2002).

[9] *Young v. State*, 267 Ga. App. 91, 92-93 (598 SE2d 840) (2004).

[1] The rights of the biological father were also terminated; however, the father has not appealed this termination.

rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

*In the Interest of R. W.*[2]

Viewed in this light, the record shows that, after receiving a report that C. R. G., an asthmatic, was dehydrated and not getting necessary medication, the Department of Family & Children Services (DFACS) began to monitor appellant, who suffers from some degree of mental retardation. Sometime thereafter, appellant moved into her boyfriend's home where her boyfriend's brother, a registered sex offender, also resided. While she was there, appellant left C. R. G. with family members who later became unable or unwilling to keep the child. Because appellant refused to leave her boyfriend's home, C. R. G. was taken into DFACS's custody pursuant to an order for shelter care issued on July 2, 2002.

On September 30, 2002, the trial court determined that C. R. G. was a deprived child, and appellant never challenged this ruling. At a subsequent hearing, appellant was issued a case plan which required her to do the following: (1) maintain a safe, stable residence; (2) secure employment; (3) cooperate with Parent Aide services; (4) complete parenting classes; (5) abstain from using tobacco products in the child's presence; (6) submit to random drug screens; (7) visit the child regularly; and (8) apply for disability income.

After appellant failed to complete the case plan by April 10, 2003, DFACS informed appellant that it would recommend nonreunification if the case plan were not completed within 90 days. Thereafter, on September 10, 2003, the trial court issued an order in which it found that "there is some question as to whether or not the Mother will ever be able to attain appropriate parenting skills such that the child can be returned to her. As a result, the Court finds that a second evaluation of the Mother should be performed to address this issue." In addition, the trial court ruled that appellant's case plan should be modified to the adoption of C. R. G. following termination of appellant's parental rights.

In accordance with the trial court's order, appellant was examined by Dr. Jeffery Dulin who opined:

[Appellant's] history and current performance suggest[ ] that she is having considerable difficulty learning effective

---

[2] *In the Interest of R. W.*, 248 Ga. App. 522-523 (1) (546 SE2d 882) (2001).

parenting strategies with both classroom and practical parenting skill development services, which have reportedly been in place over the last year. [Appellant] may not be able to develop the skills necessary to provide adequate parenting for her children, on a consistent basis, without in-home assistance, such as a mother or relative living in the home who [is] willing to take on the primary responsibility for parenting the children.

Following this evaluation, the trial court entered an order finding that appellant had still failed to comply with her case plan and determined that, due to appellant's parenting deficiencies, reunification of C. R. G. with appellant would not be appropriate. Among other things, appellant failed to attain a job or secure a stable home. On February 17, 2004, DFACS filed a petition for the termination of appellant's parental rights, and, following a hearing, the trial court granted this petition on September 29, 2004. Appellant now contends that the evidence failed to support the trial court's decision.

The transcript shows that, at the termination hearing, several social workers testified that, although they repeatedly tried to teach appellant proper parenting skills, she was unable to remember and apply what she had been taught. In addition, appellant, who has mild mental retardation, missed approximately 30 percent of her appointments with DFACS and had trouble complying with a marked calendar which had been provided to her. Appellant received poor ratings regarding her problem analysis, psychological development, and parenting skills. Also, appellant never bonded properly with C. R. G., and, instead, she simply observed C. R. G. more than she interacted with the child.

A trial court's decision to terminate parental rights is premised on a two-step analysis. First, the juvenile court must find the existence of parental misconduct or inability, and this finding

must be supported by clear and convincing evidence that: (i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of the deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child.

*In the Interest of J. L. K.*[3] See OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

---

[3] *In the Interest of J. L. K.*, 245 Ga. App. 860, 861 (539 SE2d 507) (2000).

There is no question in this case that C. R. G. is a deprived child, as appellant is bound by the trial court's prior findings of deprivation which were never appealed. See, e.g., *In the Interest of J. J.*;[4] *In the Interest of J. S. G.*[5]

The second factor in the analysis requires a showing that the lack of proper parental care or control caused the deprivation. The statute provides six conditions that a juvenile court may consider regarding this issue, including

> [a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child; [and] [p]hysical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent.

OCGA § 15-11-94 (b) (4) (B) (i), (v). In this case there was clear evidence that appellant was unable to learn the necessary parenting skills to properly raise C. R. G. and that, at times in the past, C. R. G., who was asthmatic, was not receiving proper hydration or medication. Therefore, this prerequisite is satisfied.

Sufficient evidence was also presented to show that the cause of the deprivation is likely to continue in this case. It is appropriate for a trial court to consider a parent's past conduct in determining whether the deprivation is likely to continue. *In the Interest of C. B. H.*[6] In this case, appellant could not learn proper parenting skills, despite repeated attempts. In addition, her past actions call into question her abilities, including her decision to leave her child with relatives while she moved in with her boyfriend. And, although appellant ultimately rented a trailer and began receiving disability income, she never attained a stable job or completed all of the goals set forth in her case plan. And, indeed, the majority of appellant's efforts to satisfy her case plan began only after the petition for termination was filed. Given these circumstances, we cannot say that the trial court erred by determining that the deprivation was likely to continue.

The same evidence supporting a finding that the deprivation is likely to continue also supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm

---

[4] *In the Interest of J. J.*, 259 Ga. App. 159, 161-162 (575 SE2d 921) (2003).

[5] *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000).

[6] *In the Interest of C. B. H.*, 262 Ga. App. 833, 836 (1) (586 SE2d 678) (2003).

to the child. *In the Interest of D. S.*[7] Thus, the facts discussed in the preceding paragraph satisfy this prerequisite.

In the second step of the termination analysis, the trial court must determine whether the termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. *In the Interest of C. G. B.*[8] See OCGA § 15-11-94 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Punctuation omitted.) *In the Interest of C. N. H.*[9]

The record shows that C. R. G. bonded to her foster parents and was developing nicely in their care. As C. R. G. flourished in foster care and appellant has proven incapable of learning parenting skills and completing her case plan, the trial court was authorized to determine that termination of appellant's parental rights was in the best interest of C. R. G.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED MARCH 11, 2005.

*Harold W. Wallace III*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Hammond & Hammond, Thomas B. Hammond*, for appellee.

---

[7] *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001).

[8] *In the Interest of C. G. B.*, 242 Ga. App. 705, 709 (531 SE2d 107) (2000).

[9] *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999).