616 S.E.2d 196 (2005)
273 Ga. App. 863
In the Interest of H.D.T. et al., children.
No. A05A0654.
Court of Appeals of Georgia.
June 22, 2005.
Certiorari Denied October 11, 2005.
*197 Jerry M. Daniel, Waynesboro, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Shelton, Collins & Gordon, William F. Collins, Anne R. Moore, Atlanta, for appellee.
PHIPPS, Judge.
The mother of H.D.T., S.N.T., and J.M.T. challenges the termination of her parental rights to these children, contending that the evidence was insufficient to support a finding of parental misconduct or inability as contemplated by OCGA § 15-11-94. Because the record shows that the evidence was sufficient, we affirm.[1]
Termination of parental rights under OCGA § 15-11-94 requires the juvenile *198 court to undertake a two-step process. First, the court must determine whether there is clear and convincing evidence of parental misconduct or inability as provided in OCGA § 15-11-94(b). Under that Code section, parental misconduct or inability may be found when (1) a child is deprived; (2) the cause of the deprivation is lack of proper parental care or control; (3) such deprivation is likely to continue or not likely to be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[2] If there is clear and convincing evidence of parental misconduct or inability, OCGA § 15-11-94(a) then requires the court to consider whether terminating the parent's rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. "On appeal, we construe the evidence in the light most favorable to the findings of the juvenile court, and our standard of review is whether a rational trier of fact could have found that the parent's rights should be terminated."[3]
In January 2002, the Georgia Department of Family and Children Services ("DFCS") filed a petition claiming that H.D.T., S.N.T., and J.M.T., aged eight, six, and three years, respectively, were deprived. The petition alleged that the children's mother was not meeting their needs, that she was "mentally limited," that she was using drugs, and that the children were frequently absent from school. The petition further stated that the two older children had been found and removed from their putative father's home, that they were not being supervised there, and that their father's girlfriend was a drug addict. After a hearing, the juvenile court entered an order the following month determining that the children were deprived and placing them in the temporary legal custody of DFCS.
On March 5, 2002, DFCS developed a reunification plan for the mother. It required her to obtain and maintain stable employment and housing for at least six months, ensure that the children regularly attended school (if the children were returned to her), leave them only with appropriate caregivers, complete parenting classes, maintain monthly contact with DFCS, achieve six months of negative drug screens, complete a drug and alcohol assessment and follow all treatment recommendations, and maintain regular contact with the children. On March 6, the mother tested positive for marijuana. On March 13, the juvenile court ordered the mother to comply with the plan.
In April 2003, DFCS filed a petition to terminate the parental rights of the children's mother and putative fathers and to place the children in the permanent custody of DFCS.[4] At a hearing on the termination petition held in August 2003, evidence showed that H.D.T. and S.N.T. had been removed from the home of their putative father, who was then under a court order not to have children in his home. These two children, along with J.M.T., had been placed together with a foster mother in January 2002. Initially, H.D.T. had nightmares, bed-wetting, and behavior problems such as throwing "fits," fighting with school teachers, cursing and attempting to hit her foster mother, screaming, banging her head against the wall, and pulling her hair. S.N.T. displayed some of these problems, although not as severely as H.D.T. J.M.T. had rotten teeth that required her to undergo surgery. All three children had head lice.
There was also evidence showing the mother's failure to meet the goals set out in the reunification plan. She had been uncooperative, had failed repeatedly to appear for drug screens, had refused to attend any recommended drug treatment, and had missed seven of the twenty-six scheduled visitations with her children. And at the time of the hearing, she had only recently started parenting classes. The mother never provided evidence of stable housing. Although she had maintained that she was living with her *199 mother, in five separate visits by DFCS to that location during the three months preceding the termination hearing, the mother could not be found there. The mother never provided proof of employment, although she had reported brief employment at a retail establishment. She was admittedly unemployed at the time of the hearing.
A psychologist who evaluated the mother in May 2003 testified that she had a long history of instability, drug use, and family dysfunction and that it would be difficult, if not impossible, for her to effectively parent the children, particularly H.D.T. because of the child's emotional disorders. According to the psychologist, H.D.T.'s psychological issues were caused by the mother's physical or emotional unavailability to her. Given the children's close bond with their foster parents, the psychologist opined that it would be "criminal" to remove the children from their foster home.
H.D.T.'s treating psychiatrist diagnosed the child with a bipolar mood disorder. He testified that this condition manifested in part due to "stressors in the environment, chaotic situations." The psychiatrist reported that, since H.D.T. had been placed in foster care, however, her condition had improved significantly due to a positive response to medication and her foster mother's stabilizing influence. He opined it would be detrimental to remove H.D.T. from the foster mother's home.
The children's foster mother testified that H.D.T. and S.N.T. no longer exhibited the behavior problems they had previously displayed. H.D.T. was taking medication for depression and for attention deficit and hyperactivity disorders. The foster mother and her husband had come to love the three children and wanted to adopt them.
The mother also testified at the hearing, reporting that the weekend before the hearing, she had moved in with her boyfriend. According to the mother, his apartment was not large enough to accommodate her children. She stated, however, that she could get a job and then get a larger home. She vowed to make sure her children would attend school and go to medical appointments. She explained that she had missed some scheduled visitations with her children because she was either searching for employment out of town or suffering from complications with a pregnancy. The mother recalled that she had last used drugs in December 2002 or January 2003, stating that she would "just smoke a joint every now and then." The mother testified that if H.D.T., S.N.T., and J.M.T. were reunited with her, she would do her best to take care of them, in addition to her fourth and youngest child.
The trial court entered an order terminating the rights of the mother and the putative fathers and committing the children to DFCS's custody. On appeal, the mother contends that the evidence was insufficient to support a finding of parental misconduct or inability.
a. There was sufficient evidence that the children were deprived. The juvenile court's order determining that the children were deprived was not appealed. The court correctly determined that the mother was bound by that order.[5]
b. There was sufficient evidence that the lack of proper parental care or control by the mother caused the children's deprivation.
In determining whether the lack of parental care or control is causing the deprivation, the court shall consider, among other things, the parent's (1) excessive use of or history of chronic, unrehabilitated abuse of narcotic or dangerous drugs or controlled substances that render the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child and (2) physical, mental, or emotional neglect of the child.[6] In addition, where the child is not in the custody of the parent who is the subject of the proceedings, the court shall consider whether the parent unjustifiably failed significantly for at least one year before the termination petition was filed to develop and maintain a parental bond with the child in a meaningful, supportive manner, *200 to provide for the care and support of the child as required by law, and to comply with a court-ordered plan designed to reunite the child with the parent.[7]
Evidence at the termination hearing showed that the mother's drug abuse rendered her incapable of providing adequately for the children. In addition, there was evidence of the mother's physical, mental, and emotional neglect of her children. And there was evidence showing that, for a period of at least one year prior to the filing of the termination petition, the mother had failed significantly to comply with the court-ordered plan designed to reunite her with her three children. Moreover, she showed no justifiable cause for such failure. The juvenile court was authorized to find that the lack of parental care or control was the cause of the children's deprivation.
c. There was sufficient evidence that the deprivation would likely have continued. In determining whether the children's deprivation is likely to continue, the court may consider the parent's past conduct.[8] The evidence showed that the mother's drug abuse had continued and that she had refused to avail herself of drug treatment. In fact, she conceded that she had last used marijuana in December 2002 or January 2003, nearly one year after being ordered to provide negative drugs screens and attend substance abuse treatment. Despite the passing of a year, she had secured no employment and no residence that could accommodate her children. Only recently had she begun parenting classes. Although the mother cites her testimony that she could get a job, move to a larger residence, and otherwise comply with the reunification plan, "the decision as to the children's future must rest on more than positive promises which are contrary to negative past fact."[9] Given the lack of evidence that the mother was capable of successfully parenting her children, the juvenile court was authorized to find that the deprivation would continue.[10]
d. There was sufficient evidence that the continued deprivation would cause or was likely to cause serious physical, mental, emotional, or moral harm to the children. According to mental health professionals who testified at the termination hearing, the mother's instability and drug use made it nearly impossible for her to effectively parent the children, particularly H.D.T. The evidence showed that H.D.T.'s psychological issues had been caused by her mother's physical or emotional unavailability and by unstable environments. While that child's condition had improved in foster care, the evidence showed that her condition could worsen if she was placed in an unstable environment. There was evidence that all three children needed stability, and the mother failed to show that she was capable of providing that. The juvenile court was authorized to find that continued deprivation would have caused or was likely to have caused serious physical, mental, emotional, or moral harm to the children.[11]
Thus, contrary to the mother's contention, there was sufficient evidence to support a finding of parental misconduct or inability as contemplated by OCGA § 15-11-94.[12] The mother does not challenge the juvenile court's determination that termination of her parental rights is in the children's best interests. Accordingly, we conclude that the juvenile court did not err in terminating the mother's parental rights to H.D.T., S.N.T., and J.M.T.
Judgment affirmed.
ANDREWS, P.J., and MIKELL, J., concur.
NOTES
[1] Relatives of J.M.T.'s putative father have filed a brief in this appeal contesting the juvenile court's denial of their motion to intervene for purposes of seeking custody of J.M.T. Because their challenge is properly asserted as part of Case No. A05A1763, a separate case docketed in this court pursuant to their notice of appeal, we do not reach its merits here. Accordingly, their brief submitted in this case is stricken. They may pursue their claims of error in Case No. A05A1763. See Court of Appeals Rules 22 and 23.
[2] OCGA § 15-11-94(b)(4)(A).
[3] In the Interest of R.S., 270 Ga.App. 810, 812, 608 S.E.2d 286 (2004) (Punctuation and footnote omitted).
[4] The putative fathers are not parties to this appeal.
[5] See In the Interest of B.L.S., 239 Ga.App. 771, 774, 521 S.E.2d 906 (1999).
[6] OCGA § 15-11-94(b)(4)(B).
[7] OCGA § 15-11-94(b)(4)(C).
[8] In the Interest of B.L.S., supra at 775, 521 S.E.2d 906.
[9] In the Interest of K.J., 269 Ga.App. 78, 83(3), 603 S.E.2d 497 (2004) (footnote and punctuation omitted).
[10] See id.
[11] See In the Interest of S.L., 189 Ga.App. 361, 362, 375 S.E.2d 484 (1988).
[12] See In the Interest of S.L., supra.