619 S.E.2d 755 (2005)
275 Ga. App. 49
In the Interest of P.L.S.D. et al., children.
No. A05A0843.
Court of Appeals of Georgia.
August 10, 2005.
*756 Joshua Smith, for appellant.
Philip Woodward, Bruce Kling, Dalton, for appellees.
ADAMS, Judge.
On November 5, 2004, the Juvenile Court of Whitfield County granted an order to terminate the parental rights of the mother of minor children P.L.S.D. and S.T.N.D. and extended a previous order granting custody to the children's maternal grandmother and her husband. The mother appeals on the grounds that the evidence was insufficient to fulfill the requirements of OCGA § 15-11-94.
On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. In the Interest of S.H., 251 Ga.App. 555(1), 553 S.E.2d 849 (2001). "We do not weigh the evidence and must defer to the trial judge as the factfinder." (Citation and punctuation omitted.) In the Interest of C.F., 251 Ga.App. 708, 555 S.E.2d 81 (2001).
The maternal grandmother and her husband (the "petitioners") first obtained custody on May 30, 2000, when the same court granted their deprivation petition and awarded *757 them temporary custody of the children for two years. The children's putative biological fathers and the mother all waived formal fact-finding and agreed with the facts of the deprivation petition that none of them was able to care for the children and that the children were deprived. Also, neither of the fathers had been married to the mother nor legitimated his child, and the mother apparently did not have stable employment or a permanent residence. At the time, P.L.S.D. and S.T.N.D. were five and one-half years old and two years old respectively. The deprivation order has never been appealed.
On June 11, 2002, the court granted a motion to extend custody for another two years with the consent of the three parents. The court further stated that for it to consider a return of custody, the mother would have to meet the following requirements: obtain and maintain stable and suitable housing with sufficient space for the entire family for at least six months; obtain and maintain gainful employment with income sufficient to meet the needs of the family for at least six months; provide regular weekly child support payments in the amount equal to 25% of her gross income; and maintain meaningful contact with the children through visitation. The order allowed the fathers to maintain "meaningful contact" with their respective children and imposed child support in the form of weekly payments of 20% of their individual gross income.
On May 4, 2004, the petitioners filed a motion to extend the previous custody order and a petition to terminate the parental rights of all three parents. In the petition they allege that the mother had failed to meet any of the conditions of the previous order; that one father paid child support fairly regularly but rarely saw his child and was unable to provide a stable home for her; that the other father could not pay child support or provide a permanent home for his child, and that although he had contact with her weekly, he agreed she should remain with the petitioners on a permanent basis. A hearing was held on November 4, 2004.
At the time of the hearing the mother was renting a house in LaFayette and had maintained residence there for 12 months. However, she had recently been suspended from her job at Sherman Hills Health Care as a result of her arrest on drug-related charges. She had no means of support other than her last paycheck and no future job prospects. Prior to her suspension she worked full time at Sherman Hills for $9.27 per hour for a period of 16 months. Previously, she had worked for her brothers-in-law for approximately six months in exchange for rent, food, and cigarettes and before that at Waffle House. Despite her recent full-time employment, the mother has paid a total of only $1,100 in child support since the June 2002 custody order was issued, a sum she admits is well below what was expected.
The mother has described herself as a former "addict" in need of medication for untreated depression. For the past ten years she has been an intermittent user of marijuana and began supplementing that habit eight years ago with the use of methamphetamine. Although the mother claims to have stopped using drugs in late 2003, one of the fathers testified that she admitted to smoking marijuana in March 2004, and a lifelong acquaintance and former friend of the mother testified that she was present when the mother smoked methamphetamine and marijuana in late summer 2004, just months before the hearing. The mother has never sought treatment for her drug abuse but has twice attended therapy for depression, for which she was prescribed medication. However, despite admitting that she needs the medication, she stopped taking it after only one month and quit therapy at least a year prior to the hearing.
Regarding contact with the children, the mother buys them presents on Christmas and birthdays, has regular, daily phone conversations with them averaging five to ten minutes in length, and visits them at the petitioners' home three to four times monthly for three to five hours at a time. During these visits the mother typically watches TV or reads with the girls, but by her own admission she would sometimes use these visits to nap or use the telephone. Once, unable to afford the ride home, she borrowed five dollars from the paternal step-grandfather and five dollars from P.L.S.D. She has *758 taken no part in the girls' schooling, discipline, or healthcare and does not know the name of S.T.N.D.'s doctor or how to administer the medication used to control the child's severe asthma.
In the petitioners' custody, P.L.S.D. and S.T.N.D. have progressed in school, received proper medical care, and enjoyed family vacations to Busch Gardens, St. Augustine, and Myrtle Beach. Since being removed from their mother's custody in May 2000, they have known no other home. Conditional upon the court granting their petition, the petitioners agreed to allow the mother and the two fathers to continue visiting the children and ultimately dropped their petition to terminate one father's parental rights after he consented to grant them permanent custody of S.T.N.D. Both fathers consented on the record to the children remaining in the petitioners' custody.
In determining whether to terminate parental rights, courts apply a two-step analysis:
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
(Footnote omitted.) In the Interest of V.M.T., 243 Ga.App. 732, 735-736(3), 534 S.E.2d 452 (2000). See also OCGA § 15-11-94(b)(4)(A).
a. Parental Misconduct or Inability. We find that there was clear and convincing evidence to support a finding by the juvenile court of parental misconduct or inability based upon the statutory factors. Only the evidence related to the mother will be presented.

(1) Deprivation.
Because the mother did not appeal the juvenile court's order finding that the children were deprived, she is bound by that determination. In the Interest of B.L.S., 239 Ga.App. 771, 774, 521 S.E.2d 906 (1999).

(2) Lack of proper parental care or control as cause of deprivation.
In connection with the original deprivation order, the mother has admitted that her failure to provide proper care or control caused the children's deprivation. The mother's failure to appeal the deprivation order renders the juvenile court's determination on this second factor binding. In the Interest of A.G., 253 Ga.App. 88, 89(1)(b), 558 S.E.2d 62 (2001); In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001).

(3) The cause of the deprivation is likely to continue.
"[E]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required." (Citations and punctuation omitted; emphasis in original.) In the Interest of K.M., 240 Ga.App. 677, 680, 523 S.E.2d 640 (1999). "But the trial court is entitled to consider evidence of the mother's past actions in determining whether the deprivation is likely to continue. It is not bound by mere promises to do better in the future." (Citations omitted.) In the Interest of A.M., 259 Ga.App. 537, 542, 578 S.E.2d 226 (2003).
Here clear and convincing evidence was presented to show that the deprivation was likely to continue. Because of the mother's continued recent use of illegal drugs, she was unable to keep a job and possibly a home, and she faces possible criminal sanctions. She has never sought treatment for her drug use and has admitted she is depressed but ceased taking prescribed medication. She has also shown little willingness to provide support for the children even at times that she had a job. At the time of the hearing, the mother had no means of support other than her last paycheck and no future job prospects. Finally, the mother does not know how to care for one of the children's medical needs.

*759 (4) Continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child.
"[I]t is not automatically true that a finding that deprivation is likely to continue will support a finding that continued deprivation will harm the child." In the Interest of J.T.W., 270 Ga.App. 26, 37, 606 S.E.2d 59 (2004). And we are mindful that "the fact that a mother is unemployed, without prospects for future employment, and without any stable living arrangements is not sufficient to terminate parental rights." (Citations and punctuation omitted.) In the Interest of M.M., 263 Ga.App. 353, 359(1), 587 S.E.2d 825 (2003). But in this case the trial court was authorized to conclude that serious physical, mental, emotional or moral harm would result if the children had to rely on a mother who is not willing to quit using illegal drugs, not willing to seek treatment for her drug problems and emotional issues, not willing to pay child support even when she has a job, not willing to obey court orders, and not willing to learn how to care for her children's medical needs.
b. Best Interest of the Child. The evidence presented at the hearing and discussed above supports the juvenile court's conclusion that terminating the mother's parental rights was in the best interests of the children. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest. [Cit.]" In the Interest of D.L., 268 Ga.App. 360, 360-361, 601 S.E.2d 714 (2004). See also OCGA § 15-11-94(a) (court may consider children's need for a secure, stable home). In addition, the evidence showed that the children were thriving in the petitioners' care, both of the children's fathers agreed that the children should remain with the petitioners, and the guardian ad litem recommended termination.
Judgment affirmed.
SMITH, P.J., and ELLINGTON, J., concur.