A06A0482. In the Interest of T. A., a child.

(631 SE2d 399)

Smith, Presiding Judge.

The biological mother of T. A. appeals an order terminating her parental rights. She asserts that the evidence was insufficient to support a finding of parental misconduct or inability by clear and convincing evidence. After reviewing the record, we find otherwise and affirm.

When considering a challenge to the sufficiency of the evidence in a termination of parental rights case, this court views the evidence in the light most favorable to the juvenile court's determination. *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000). When the evidence shows that any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights have been lost, we defer to the court's factfinding. Id.

So viewed, the evidence shows that the Lamar County Department of Family and Children Services (DFACS) began its investigation of the mother when it received a report on June 11, 2004, that the mother had left T. A., her ten-month-old son, alone in a motel room with other young children. A charity had placed the mother and children in the motel room as a result of a domestic incident between the mother and William Piper, with whom the mother and children had been living. As DFACS was aware of a substantiated child sexual abuse case against Piper,[1] it prepared a safety plan forbidding the mother from returning to Piper's home with her children. The mother placed her children with a relative, but removed the children from that home a few days later and returned with them to the home of Piper. Based on this conduct, as well as the mother's confused and disorganized behavior, DFACS obtained custody of the children on June 14, 2004, and placed them in foster care.

To facilitate reunification of the mother with T. A., DFACS prepared two reunification plans, one on June 25, 2004, and the other on October 29, 2004. These case plans set the following goals for her: (1) obtain a psychological evaluation and follow any recommendations made as a result of that evaluation; (2) attend counseling sessions; (3) obtain a parenting fitness evaluation; (4) attend parenting classes; (5) demonstrate an ability to care for her children; (6) obtain a job and maintain it for six months; (7) obtain her own housing, independent from relatives, and maintain it for six months; (8) obtain a substance abuse assessment and submit to random drug screens; and (9) remain drug and alcohol free.

---

[1] In its order terminating the mother's parental rights, the trial court noted that the trial of Piper ended in a mistrial as a result of a hung jury.

The mother obtained the required parenting fitness evaluation in July 2004. One of the results of the evaluation was that 99.4 people out of 100 would be more effective in parenting than the mother; the evaluator, a licensed therapist, testified that she had never seen a lower score. The therapist testified that the mother could not independently care for a young child like T. A., and that none of the mother's family members or friends was available to constantly supervise the mother's care of T. A. The evaluator testified that it was very difficult for her to follow the mother's train of thought and that the mother acknowledged "that she was 'a little bit schizophrenia'ed.'" The evaluator was concerned that the mother's "lack of good judgment and her ability to be influenced by other people could greatly harm [her] children."

The licensed psychologist who evaluated the mother in May 2005 testified that he diagnosed her with depressive disorder, learning disorder, and schizotypal personality disorder. With regard to the last diagnosis, the psychologist testified that the mother "evidences odd and unusual social behavior and a disruption of thought process representing a thought disorder." The psychologist pointed to the mother's following "illusional" statements to support his diagnosis: "I secretly can dominate people's personalities if I want or try. When my eyes turn light brown it means I'm happy or misty. Brown means I'm mad or mischievous. You can feel how long they are staring at you." The psychiatrist testified that medication was the only treatment that might improve the mother's ability to parent. He expressed concern that she might try to correct a young child's behavior with the power of her mind alone. He also explained that the mother's thought disorder would create intellectual abuse for a young child, who would be confused by being repeatedly exposed to a parent's statements that do not comport with reality.

The mother failed to comply with the case plan, particularly by failing to take her medication as prescribed and by failing to attend all scheduled counseling sessions. She admitted that she would cut her medication in half, without the advice of her doctor, "[b]ecause sometimes they'd be strong." She also admitted, that at the time of the termination hearing, she had not taken her medication for five days. The mother claimed that she attended all scheduled counseling sessions, but the counseling center's records showed that she attended two counseling sessions on April 18, 2005 and May 4, 2005, then failed to attend a third scheduled session, was almost terminated from the program for failing to respond to two follow-up letters, and did not schedule another appointment until the month before the termination hearing.

The termination of parental rights requires the juvenile court to undertake the two-step process outlined in OCGA § 15-11-94 (a).

First, the court must find by clear and convincing evidence that parental misconduct or inability exists; then the court must find that termination of parental rights is in the best interest of the child. Parental misconduct or inability exists when a court finds that the following four criteria are present:

> (i) The child is a deprived child, as such term is defined in Code Section 15-11-2;
>
> (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;
>
> (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and
>
> (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

OCGA § 15-11-94 (b) (4) (A). Because the mother did not appeal the juvenile court's finding of deprivation, she is bound by that finding, leaving for determination only the remaining three criteria under OCGA § 15-11-94 (b) (4) (A). See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000).

With regard to the lack of proper parental care and control, the juvenile court is required to consider, among other matters, whether the following factors exist: (1) "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94 (b) (4) (B) (i); and (2)

> the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: . . . (ii) to provide for the care and support of the child as required by law or judicial decree; and (iii) to comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-94 (b) (4) (C).

Here, the record shows that the mother was diagnosed with a mental condition that prevents her from caring adequately for T. A., that she failed to attend the counseling sessions required in her case plan, and that she did not take medication for her mental illness as prescribed, another case plan violation. This evidence supports the

juvenile court's conclusion that T. A. was deprived, that the deprivation was attributable to a lack of proper parental care, that the deprivation was likely to continue, and that it was likely to cause serious mental, emotional, and moral harm to him. See *In the Interest of D. L.*, 270 Ga. App. 847, 849 (608 SE2d 311) (2004). We therefore affirm the judgment terminating the mother's parental rights.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006.

*Christopher E. Chapman*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, W. Ashley Hawkins*, for appellee.