632 S.E.2d 472 (2006)
279 Ga. App. 730
In the Interest of C.G. et al., children.
No. A06A0680.
Court of Appeals of Georgia.
June 12, 2006.
*473 Richard Jones, Canton, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Hope M. Pereira, Woodstock, Charissa A. Ruel, Assistant Attorney General, for appellee.
JOHNSON, Presiding Judge.
A juvenile court terminated the parental rights of the mother of minors C.G. and J.G. The mother moved for a new trial, but the trial court denied the motion. The mother appeals.
1. The mother contends that there is insufficient evidence that the cause of the children's deprivation is likely to continue and that such continued deprivation is likely to cause serious harm to them. The contention is without merit.
In assessing the sufficiency of the evidence in a termination of parental rights case, we construe the evidence in favor of the lower court's judgment.
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.[1]
Construed in favor of the juvenile court's termination of the mother's parental rights, *474 the evidence shows that in March 2002, the children were taken into custody by the Department of Family and Children Services ("department") because the mother and the children's father had both tested positive for illegal drugs, including methamphetamine and cocaine. Eviction notices had also been filed at the family's residence, and neither the mother nor father was employed. A deprivation hearing was held in April 2002, and the mother stipulated that the children were deprived. The juvenile court gave the department temporary custody of C.G. and J.G., finding deprivation based on unstable housing, the parents' unresolved substance abuse problems and parenting issues in providing for the special needs of J.G., who has cerebral palsy.
The department developed a case plan to reunite the mother with her children, requiring her, among other things, to maintain a stable residence, maintain contact with the children, undergo a mental health evaluation, follow the recommendations of a drug and alcohol assessment, and follow a doctor's recommendations regarding treatment and therapy for the children. Over the next several months, the mother did not comply with many of the reunification plan requirements, failing to establish a stable home, failing to undergo a mental health evaluation, failing to undergo a drug and alcohol evaluation, and failing to consult with a doctor regarding the children's health treatments and therapy. The mother also cancelled various scheduled visits with the children.
In October 2002, the mother was incarcerated for a probation violation based on a failed drug test, and she was released from jail in February 2003. After her release, the juvenile court entered an order modifying the reunification plan, noting that three other children had previously died in the mother's custody  two from sudden infant death syndrome and one from a birth defect. Under the modified plan, the mother was required to obtain employment, undergo a home evaluation, remain drug free, refrain from smoking in the children's presence because they both have asthma, take a class on asthma, and learn to assist J.G. with his therapies.
Near the beginning of April 2003, the mother was again incarcerated, this time for writing bad checks. She was released on bond on April 29, 2003, and subsequently missed numerous scheduled visitations with C.G. and J.G. In February 2004, she tested positive for amphetamine and cocaine. A month later, in March 2004, she tested positive for methamphetamine.
At the termination hearing, the mother testified that the positive drug tests were not her fault and that she does not still have a substance abuse problem. She also testified that she had just started a job at a restaurant paying $2.13 an hour, plus tips. But she had not been able to go yet because she had been in a car wreck.
A department caseworker testified that the mother had failed to maintain stable housing, that employment was still an issue and that she had not attended a scheduled drug screen in June 2004, which was considered to be another positive drug test. She further testified that J.G.'s cerebral palsy and ability to function had greatly improved in foster care, that C.G. still has severe asthma requiring treatment, and that the children had bonded with their foster mother.
In considering the termination of parental rights, a court must first determine whether there is present clear and convincing evidence of parental misconduct or inability.[2] A court determines parental misconduct or inability by finding that the child is deprived, that the lack of proper parental care or control is the cause of that deprivation, that the cause of the deprivation is likely to continue, and that the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[3] In determining whether the lack of proper parental care or control is causing the deprivation, the court shall consider, among other things, excessive use or history of chronic unrehabilitated abuse of narcotic or dangerous drugs with the effect of rendering the parent incapable *475 of providing adequately for the needs of the child.[4]
In the instant case, we conclude that a rational trier of fact could have found by clear and convincing evidence that the mother's chronic drug abuse has rendered her incapable of providing for the needs of her children, especially in light of their serious medical conditions; that this lack of proper parental care or control is the cause of C.G.'s and J.G.'s deprivation; that this cause of the deprivation is likely to continue, as evidenced by her inability to maintain a stable home or employment; and that the continued deprivation is likely to cause serious harm to the children.[5] Accordingly, the juvenile court's decision to terminate her parental rights was supported by sufficient evidence.
2. The mother argues that she received ineffective assistance of counsel because her attorney failed to file a motion to transfer her reunification plan from Cherokee County to Douglas County, where she was living and could have successfully completed the plan. The argument is unfounded.
To establish a claim of ineffective assistance of counsel, the mother must show that her attorney's performance was deficient and that there is a reasonable probability that the result of the proceeding would have been different but for that deficiency.[6] In this case, the mother cannot make either showing.
In a similar situation, we have previously held that a mother's counsel was not ineffective in failing to request a transfer of a termination case to another state, holding that because our law does not mandate a transfer, the failure to move for such was not deficient.[7] Likewise, our law does not mandate the transfer of a reunification plan where the parent lives in or has moved to a different county.
Whenever an order of disposition incorporates a reunification plan and the residence of the parent is not in the county of the court with jurisdiction or the residence of the parent changes to a county other than the county of the court with jurisdiction, the court may transfer jurisdiction to the juvenile court of the residence of the parent or parents to whom reunification is directed.[8]
At the motion for new trial hearing, counsel testified that she had discussed moving the case plan with both the mother and her department caseworker, but did not file a motion to do so because the department had indicated that providing services in another county would be difficult since the mother had moved so frequently. Given the department's opposition to transferring the reunification plan, and given that transfer is not mandatory under the law, the mother's attorney was not deficient in failing to file a transfer motion.[9]
Moreover, even if we assume for the sake of argument that counsel was deficient in not filing such a motion, the mother has not shown a reasonable probability that the outcome of the termination proceeding would have been different but for that deficiency. First, even if the motion had been filed, it very well may have been denied, especially in light of the department's purported opposition to transfer. Second, even if the motion had been filed and granted, there is no guarantee that the mother would have actually met the plan goals.
Finally, and perhaps most importantly, even if we assume that the mother would have completed the plan had it been transferred, there still are other grounds for terminating her parental rights. In its termination order, the juvenile court found parental misconduct or inability based not only on the mother's unjustified noncompliance with the reunification plan, but also based on her unrehabilitated substance abuse and her failure to maintain a meaningful *476 bond with the children. Because there were significant grounds for finding parental misconduct or inability other than the mother's failure to comply with the case plan, there is no reasonable probability that the court would not have terminated her parental rights had counsel successfully moved to transfer the plan to another county. Under these circumstances, the trial court did not err in denying the mother's claim of ineffective assistance of counsel.[10]
Judgment affirmed.
MILLER and ELLINGTON, JJ., concur.
NOTES
[1] (Citation omitted.) In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005).
[2] OCGA § 15-11-94(a).
[3] OCGA § 15-11-94(b)(4)(A).
[4] OCGA § 15-11-94(b)(4)(B)(ii).
[5] See In the Interest of H.D.T., 273 Ga.App. 863, 866-868(b), (c), (d), 616 S.E.2d 196 (2005).
[6] In the Interest of A.H.P., 232 Ga.App. 330, 334-335(2), 500 S.E.2d 418 (1998).
[7] In the Interest of K.M.L., 237 Ga.App. 662, 664(3), 516 S.E.2d 363 (1999).
[8] (Emphasis supplied.) OCGA § 15-11-30.5.
[9] See K.M.L., supra.
[10] See A.H.P., supra.