A06A2185. IN THE INTEREST OF D. A. B., a child.

(637 SE2d 102)

BERNES, Judge.

The mother of D. A. B. appeals the order of the Juvenile Court of Cobb County terminating her parental rights. As her sole claim of error, the mother contends that the evidence was insufficient to justify the juvenile court's "ruling of deprivation and termination of parental rights." We disagree and affirm.

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.,* 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal, we must view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated." (Citation omitted.) *In the Interest of H. Y.,* 270 Ga. App. 497, 498 (606 SE2d 679) (2004).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we first consider the factors showing parental misconduct or inability.

(a) *Deprivation.* In April 2003, the Cobb County Department of Family and Children Services (the "Department") took D. A. B. into temporary custody. Following a deprivation hearing, the juvenile court entered an order on July 30, 2003, finding that clear and convincing evidence showed D. A. B., then age seven, to be deprived. The court's findings of fact included that the mother had mental health problems and medical problems preventing her from taking appropriate care of D. A. B., and that a Department caseworker had arrived at the mother's home to find the mother incoherent and intoxicated. The court also found that the mother had neglected to refill D. A. B.'s medication, that the child had missed a significant

number of days of school, and that the mother's boyfriend was wanted in another state for the rape of a young child.

The juvenile court returned custody of D. A. B. on a temporary basis to the mother on September 30, 2003. However, temporary custody of the child was returned to the Department in May 2004. The juvenile court subsequently found that the mother had tested positive for methamphetamine, failed to complete her case plan, continued to have psychological and substance abuse issues, neglected D. A. B.'s educational and medical needs, and that D. A. B. was shown to be a deprived child by clear and convincing evidence. In June 2005, the Department filed a petition seeking to have D. A. B. determined to be deprived and seeking to terminate the parental rights of D. A. B.'s mother and father. In October 2005, the juvenile court entered an order nunc pro tunc August 30, 2005, holding that D. A. B. was deprived based on the findings set forth in the preceding deprivation order.

The deprivation orders described above, which were not appealed by the mother, were sufficient to establish that D. A. B. was a deprived child within the meaning of OCGA § 15-11-94 (b) (4) (A) (i). See *In the Interest of B. L. S.*, 239 Ga. App. 771, 774 (521 SE2d 906) (1999).

(b) *Lack of Proper Parental Care or Control.* In determining whether a child is without proper parental care and control, the court shall consider, without being limited to, six factors, including whether "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94 (b) (4) (B) (i). The court shall also consider "[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94 (b) (4) (B) (ii).

Evidence showed that the mother was diagnosed with bipolar disorder. She was also diagnosed with "polysubstance dependence" on alcohol, cocaine, and prescription medicine, for which she had never successfully completed treatment. According to the psychologist's report, the prognosis for the mother's recovery from her mental disorder and substance dependence was poor.

In her testimony, the mother admitted that she had a history of failing to take the prescribed medication for her mental illness. She admitted that her failure to take her medication results in "messing myself up," that when her medication runs out that her "head goes

crazy," and that she exercises poor judgment when not on her medication. When she ran out of medication only a few months before the termination hearing, she turned to alcohol. The mother also over-medicates: when a Department worker visited the mother's home in 2003, the mother answered the door in the nude and told the worker that she had taken 40 to 60 pills. Furthermore, the mother has attempted suicide.

The mother describes herself as an addict. She has a history of using alcohol, marijuana, LSD, cocaine, crack cocaine, and methamphetamine. The mother admitted to using methamphetamine within a few months of the termination hearing. She also maintained that within a few months of the termination hearing she had been involuntarily drugged with methamphetamine, cocaine, and heroin by an acquaintance. The evidence further showed that in May 2004, after the mother tested positive for methamphetamine, the mother left D. A. B. with a male friend, the child did not attend school that week, and that the child's scheduled medical appointment was cancelled.

Based on the foregoing, including evidence of the mother's mental illness, her recurring use of illegal drugs, her failure to consistently take her prescribed medication and the debilitating effect of her failure to properly medicate, the juvenile court was entitled to conclude that lack of proper parental care and control was the cause of D. A. B.'s deprivation. See *In the Interest of T. A.*, 279 Ga. App. 377, 379-380 (631 SE2d 399) (2006) (lack of parental care shown where, among other things, mother was diagnosed as mentally ill and failed to take her medication as prescribed); *In the Interest of C. G.*, 279 Ga. App. 730, 732 (1) (632 SE2d 472) (2006) (mother's chronic drug abuse rendered her incapable of providing for the needs of her children, and this lack of proper parental care or control was cause of her children's deprivation).

(c) *Cause of Deprivation Likely to Continue.* "In determining whether the children's deprivation is likely to continue, the court may consider the parent's past conduct." *In the Interest of H. D. T.*, 273 Ga. App. 863, 867 (c) (616 SE2d 196) (2005). Furthermore, "the decision as to the children's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation and footnote omitted.) *In the Interest of K. J.*, 269 Ga. App. 78, 83 (3) (603 SE2d 497) (2004). Here, the evidence showed that the mother, despite her expressed intent to do better in the future, had been unable to stop her use of controlled substances or to consistently take her medication as prescribed. As such, the juvenile court was authorized to find that the deprivation would continue.

(d) *Continued Deprivation will Cause or is Likely to Cause Serious Physical, Mental, Emotional, or Moral Harm to the Child.* The juvenile court found that the mother's continued use of illegal drugs and inability to monitor her own medication showed that she was unable to provide a stable environment for the child. According to D. A. B.'s treating psychologist, D. A. B. requires a stable, structured environment. The psychologist further testified that D. A. B. needed an environment at least as stable as his current foster placement; otherwise, he was likely to be "institutionalized very quickly, probably for hurting somebody." Accordingly, the juvenile court was entitled to conclude that continued deprivation in this case would cause serious mental, emotional, and moral harm to D. A. B., "since the return of [D. A. B.] to [his] mother's care in her present and most likely continuing condition would likely result in serious harm to the [child]." *In the Interest of J. K.*, 278 Ga. App. 564, 568 (2) (629 SE2d 529) (2006). See *In the Interest of P. L. S. D.*, 275 Ga. App. 49, 52 (a) (4) (619 SE2d 755) (2005) (trial court entitled to conclude that serious harm would result if her children had to rely on mother who, among other things, was not willing to stop using illegal drugs).

2. *Best Interest of the Child.* The same factors that show parental misconduct or inability, which here include the mother's unrehabilitated drug use and ongoing mental health disorders, may also support the juvenile court's finding that termination of parental rights is in the child's best interest. See *In the Interest of D. L.*, 268 Ga. App. 360, 364 (2) (601 SE2d 714) (2004). Evidence also showed that D. A. B.'s current foster care included specialized schooling, social skills training, and treatment by a psychologist and psychiatrist, and was, according to the child's psychologist, a "perfect type of placement." The juvenile court properly concluded that terminating the mother's parental rights was in D. A. B.'s best interest.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 27, 2006.

*Ayeshia A. Amon-Ra, David J. Koontz*, for appellant.

*Thurbert E. Baker*, Attorney General, *Shalen S. Nelson*, Senior Assistant Attorney General, *Jason S. Naunas*, Assistant Attorney General, *Sanders B. Deen*, for appellee.