650 S.E.2d 788 (2007)
In The Interest of J.A.S., a child(two cases).
Nos. A07A1056, A07A1057.
Court of Appeals of Georgia.
August 7, 2007.
*789 Avrett, Ponder & Withrock, Dalton, William B. Barnwell, for appellant(case no. A07A1056).
Joshua J. Smith, for appellant(case no. A07A1057).
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Bruce A. Kling, for appellee.
MILLER, Judge.
In Case Nos. A07A1056 and A07A1057, J.A.S.'s biological mother and father, respectively, appeal from an order of the juvenile court terminating their respective parental rights. In their separate appeals, both the mother and the father assert that the evidence was insufficient to support the juvenile court's decision. The father also asserts as error the juvenile court's refusal to continue the termination hearing as to him until he could obtain counsel. Finding that the juvenile court's order is supported by clear and convincing evidence, and that the father has *790 failed to demonstrate any harm caused him by the absence of counsel, we affirm.
In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the question is whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." In the Interest of C.M., 275 Ga.App. 719, 621 S.E.2d 815 (2005). In making that determination, this Court "review[s] the evidence in a light most favorable to the lower court's judgments" and we "neither weigh [] evidence nor determine [] the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citations omitted.) Id. at 719-720, 621 S.E.2d 815. Additionally, the fact that a parent is not represented by counsel at a termination hearing constitutes grounds for reversal only where the parent can show he suffered harm  i.e., "how he would have been successful had he been represented by counsel." In the Interest of M.S., 279 Ga.App. 254, 261-262(1), 630 S.E.2d 856 (2006).
Viewed in the light most favorable to the juvenile court's determination, the record shows that the Whitfield County Department of Family and Children Services, acting on behalf of the Georgia Department of Human Resources (hereinafter "the Department"), opened a case file on J.A.S. in 2003 based upon his mother's drug use and the Department's inability to locate his father. In May 2005, after the mother failed to complete a drug treatment program and continued to test positive for methamphetamine, the Department filed a deprivation petition in the juvenile court, seeking temporary custody of J.A.S.[1]
Both parents were represented by counsel at the May 26, 2005 deprivation hearing, and both consented to an order finding J.A.S. to be deprived and placing him in the temporary custody of the Department. Neither parent appealed this order.
The Department developed separate reunification plans for the mother and the father. Each parent's plan required them to submit to random drug screens; remain drug free for six consecutive months; attend and successfully complete parenting classes; obtain and maintain a source of income for a minimum of six months; obtain and maintain stable, clean, and safe housing; pay child support; complete a psychological evaluation and comply with all of its recommendations; and maintain consistent and supervised visitation with J.A.S. The mother's plan also required her to obtain a substance abuse assessment and follow all treatment recommendations. The father was further required to cooperate with an anger management inventory and follow all of its recommendations.
Each of the reunification plans was incorporated into a supplemental order issued by the juvenile court on June 28, 2005. That order further provided that the Department had reviewed the goals of the reunification plans with each parent, and ordered both the mother and the father to pay a minimum of $50 per week in child support.
After the case was reviewed by a citizen review panel, the juvenile court entered a further supplemental order finding that J.A.S. should remain in foster care and incorporating changes into each parent's reunification plan, as recommended by the citizen review panel. On April 27, 2006 the Department filed a petition for the termination of both the parents' parental rights, based upon the fact that neither had completed his or her case plan.
While both parents were present at the June 22, 2006 hearing on the termination petition, only the mother was represented by counsel. Despite being given six weeks notice of the hearing, as well as instructions on how to apply for appointed counsel, the father appeared without a lawyer. The father originally told the juvenile court that he had retained an attorney, but subsequently admitted his failure to obtain counsel, and requested a continuance to give him the opportunity *791 to retain a lawyer or have one appointed. Citing the notice given to the father, as well as the instructions he received on obtaining appointed counsel, the juvenile court declined the requested continuance.
On June 26, 2006, the juvenile court issued an order terminating the parental rights of both parents, finding that neither parent had made progress toward remedying the causes of the child's deprivation and that neither parent had complied with the reunification plan.

Case Nos. A07A1056 and A07A1057
Both the mother and the father argue that there was insufficient evidence to support the juvenile court's decision to terminate their parental rights. We disagree.
1. The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94(a). Such evidence must show that: (1) the child is deprived; (2) the deprivation results from a lack of proper parental care or control; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. See OCGA § 15-11-94(b)(4)(A)(i)-(iv).
(a.) With respect to the first factor, the juvenile court's order of May 26, 2005 contained a specific finding that J.A.S. was deprived. Neither of the parents appealed that order, and each is therefore bound by the finding of deprivation. See In the Interest of C.R.G., 272 Ga.App. 161, 164, 611 S.E.2d 784 (2005).
(b.) When determining the second factor, whether a child's deprivation results from a lack of parental care and control, in situations where a parent does not have custody of that child
the court must consider, among other things, whether that parent without justifiable cause has failed significantly for a year or more prior to the filing of the termination petition: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent. OCGA § 15-11-94(b)(4)(C).
(Punctuation omitted.) In the Interest of T.B., 267 Ga.App. 484, 488, 600 S.E.2d 432 (2004).
Here, the evidence showed that while the parents had visited J.A.S. on a "regular basis," the social worker saw no interaction between the parents and the child during these visits. Thus, there was no evidence to demonstrate the existence of a meaningful parental bond between either the mother or the father and J.A.S.
Additionally, neither parent complied with the juvenile court's order requiring them to pay child support. Specifically, the mother and father provided child support in the amounts of $50 and $230, respectively, during the entire 13 months J.A.S. was in the custody of the Department. Notably, however, while failing to pay child support, the father did pay for both cable television and cell phone service for himself.
Neither parent had made any progress toward completing the other requirements of their individual reunification plans. Each parent failed to remain drug free for six consecutive months, with the mother testing positive for drugs on at least one occasion and failing to appear for several drug screens requested by the Department. Similarly, the father tested positive for methamphetamine on one occasion, and failed to appear for numerous drug screens requested by the Department.
Both parents also failed to maintain stable housing with adequate room for the child. At the time of the deprivation hearing, the mother was incarcerated on a probation violation. Prior to that time, she had never obtained her own residence.[2] The father had moved at least four times since J.A.S. was *792 taken into custody, and had lived with his girlfriend, his girlfriend's father, and his mother.
The mother never provided the juvenile court with evidence of any employment, despite the fact that the drug treatment program she entered on three separate occasions provided employment placement assistance.
While the mother completed the required parenting classes, she did so just prior to the filing of the termination petition. The father never completed these classes.
Although each parent underwent a psychological evaluation, neither of them completed the recommended treatment that resulted from those evaluations. The mother entered treatment for drug and alcohol abuse three different times, but quit each time without completing the program. Moreover, there was no evidence that the father ever sought or obtained the required anger management counseling.
The foregoing evidence was more than sufficient to support the juvenile court's finding that J.A.S.'s deprivation resulted from a lack of parental care and control on the part of each parent. See, e.g., In the Interest of T.G.Y., 279 Ga.App. 449, 451(1), 631 S.E.2d 467 (2006) (Parent's failure to pay child support "is compelling evidence that [they are] not [] able parent[s]") (citation and punctuation omitted); In the Interest of H.D.T., 273 Ga.App. 863, 864-865, 616 S.E.2d 196 (2005) (parent's repeated failure to appear for drug screens, refusal to attend any recommended drug treatment, and failure to provide evidence of stable housing or employment supported a finding of lack of parental care or control); In the Interest of M.L.P., 236 Ga. App. 504, 508(1)(b), 512 S.E.2d 652 (1999) (lack of parental care and control where parent "consistently failed to comply with the court-ordered reunification plans, i.e., maintain stable employment or adequate housing, to visit the children regularly, or to attend counseling").
(c.) The evidence of each parent's failure to comply with either their respective reunification plans or the recommendations resulting from their individual psychological assessments also supports the conclusion that, if returned to his parents, J.A.S.'s deprivation would continue. See In the Interest of A.K., 272 Ga.App. 429, 436-437(1)(c), 612 S.E.2d 581 (2005) (evidence showing that the deprivation is likely to continue includes the parent's failure to comply with case plan goals as well as a "failure to comply with the requirements of court-mandated mental health counseling"); In the Interest of K.N., 272 Ga.App. 45, 53(a)(3), 611 S.E.2d 713 (2005) (same). This evidence demonstrates that the parents have taken few, if any, steps towards remedying the causes of J.A.S.'s deprivation. Where the causes have gone untreated, logic dictates that the result  i.e., the deprivation of the child  will be the same. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) In the Interest of T.B., supra, 267 Ga.App. at 487(1), 600 S.E.2d 432.
(d.) Here, "[t]he same evidence supporting a finding that the deprivation is likely to continue also supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child." (Citation omitted.) In the Interest of C.R.G., supra, 272 Ga.App. at 164, 611 S.E.2d 784. Such harm can be inferred from the parents' failure to comply with their reunification plans, their inability or unwillingness to provide financial support, their refusal to obtain the required psychological counseling, and from their chronic drug abuse. See In the Interest of A.K., supra 272 Ga.App. at 437-438(1)(d), 612 S.E.2d 581; In the Interest of H.D.T., supra, 273 Ga.App. at 867, 616 S.E.2d 196; In the Interest of T.G.Y., supra, 279 Ga.App. at 452(1)(a)(ii), 631 S.E.2d 467.
2. Having found clear and convincing evidence of parental misconduct or inability, we now turn to the second step of the termination analysis, which requires clear and convincing evidence that the termination of parental rights was in the best interest of J.A.S., considering the child's physical, mental, emotional, and moral condition or needs, including the need for a secure, stable home. See OCGA § 15-11-94(a). Again, the record *793 supports the juvenile court's finding on this issue.
"Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) In the Interest of C.R.G., supra, 272 Ga.App. at 164, 611 S.E.2d 784. The evidence of the parents' conduct, outlined above, demonstrates that the mother and the father were each offered both the opportunity and the resources necessary to address those factors in their lives that prevented them from being fit parents. Despite this fact, neither parent took the steps necessary to regain custody of their child. That conduct, therefore, supports the conclusion that the interests of J.A.S. are best served by terminating the rights of his biological parents, thereby affording him the opportunity to be placed with parents who will treat his emotional and material needs as a priority and who will work to meet those needs.

Case No. A07A1057
The father also asserts as error the trial court's refusal to continue the termination hearing as to him until he could obtain counsel.
"Because [termination] is a civil matter not involving a state or federal constitutional right to counsel, the father is required to show harm as well as error to warrant reversal." (Footnotes omitted.) In the Interest of C.B., 258 Ga.App. 143, 148(3), 574 S.E.2d 339 (2002). Here, however, the father has failed to demonstrate what, if any, harm he suffered from the absence of counsel. "Beyond his bare claim that he was denied counsel, he failed to show what arguments he would have advanced, what evidence he would have produced in his favor, or how he would have been successful had he been represented by counsel." In the Interest of M.S., supra, 279 Ga.App. at 261-262(1), 630 S.E.2d 856. Thus, assuming arguendo that the trial court erred in this regard, that error is not reversible.
For the reasons set forth above, we affirm the order of the juvenile court in both Case Nos. A07A1056 and A07A1057, terminating the parental rights of the biological mother and father, respectively.
Judgment affirmed in both cases.
BARNES, C.J., and SMITH, P.J., concur.
NOTES
[1] At the time it filed the original deprivation petition, the Department had been unable to locate the father. After finding the father, the Department filed an amended deprivation petition on May 18, 2005.
[2] Although the mother obtained public housing, at the time of the termination hearing she had never resided in that apartment. Instead, she had someone else live there to "hold" that apartment for her until she was released from jail.