A08A0096. IN THE INTEREST OF N. S. E. et al., children.
(666 SE2d 587)

SMITH, Presiding Judge.

The father of N. S. E. and G. A. E. appeals from the juvenile court's order terminating his parental rights. In his sole enumeration of error, the father contends that the juvenile court erred in failing to evaluate his competency sua sponte. We discern no error and affirm.[1]

The underlying facts of this case are set forth in this court's opinion affirming the termination of the mother's parental rights. *In the Interest of N. S. E.*, 287 Ga. App. 186 (651 SE2d 123) (2007). Those facts are as follows:

> [I]n the spring of 2004, the mother lived with her husband and their three minor children N. S. E., G. A. E., and E. E. in an apartment in DeKalb County. N. S. E. was two years old, G. A. E. was one year old, and E. E. was four months old. In the early morning of April 27, 2004, the mother called 911 because E. E. was unconscious and bleeding from the nose. The parents' efforts at CPR, which they had attempted by themselves for four hours, had been unsuccessful in reviving the infant.

---

[1] Due to a clerical error, we originally affirmed this case for failure to include a transcript. This opinion is therefore substituted for this court's original opinion decided on May 29, 2008.

Upon arriving at the scene, emergency medical personnel found E. E. nonresponsive with injuries to his chest area and immediately transported him to the hospital emergency department. A detective who arrived at the scene shortly thereafter observed that N. S. E. and G. A. E. had marks on them accompanied with bruising and redness. Like E. E., they were taken to the emergency department for evaluation.

E. E. died shortly after arriving at the hospital. Observations made by a forensic pediatrician prior to E. E.'s death and in a subsequent autopsy revealed that E. E. exhibited bleeding in the upper inner eyelids; missing skin layers on the chest area; looped cord marks on his chest, back, and buttocks indicative of a looped object striking the infant; and parallel lines on the infant's left side suggestive of an un-looped cord injury. X-rays showed that E. E. had a total of fifteen separate broken bones in various stages of healing, including nine broken ribs and fractures in the left foot, left hand, and thigh bone. Finally, a CAT scan and the autopsy showed that E. E. had suffered an intercranial trauma which resulted in internal contusions to the scalp and brain, brain swelling, and internal hemorrhaging. The forensic pediatrician and medical examiner who performed the autopsy concluded that these injuries were nonaccidental and resulted from severe physical abuse occurring over a period of time. The medical examiner further concluded that the cause of E. E.'s death was homicide resulting from blunt force applied to the infant's head.

The forensic pediatrician also had an opportunity to examine N. S. E. and G. A. E. while they were in the emergency department. N. S. E. had old and new bruises and pattern markings on her chest, abdomen, back, and right cheek reflecting that she had been beaten with a belt and looped cord object on more than one occasion. Similarly, G. A. E. had a mark on his right cheek indicative of physical abuse.

N. S. E. and G. A. E. were placed in the immediate protective custody of the DeKalb County Department of Family and Children Services ("DFCS"). DFCS subsequently filed its deprivation petition regarding N. S. E. and G. A. E., and the juvenile court conducted a hearing on the matter. At the time of the hearing, the father was incarcerated and had been charged with murder and other child cruelty crimes

for the death of E. E. and the abuse perpetrated upon the two surviving children. The mother had been charged on three counts of deprivation of a minor for the abuse of the three children. Following the hearing, the juvenile court adjudicated N. S. E. and G. A. E. deprived and awarded temporary custody to DFCS, finding that the two children, along with E. E., had been subject to severe, ongoing physical abuse while in the custody and control of their parents.

DFCS developed a nonreunification case plan for N. S. E. and G. A. E. with adoption as the goal, which the juvenile court adopted as the permanent plan for the children. DFCS then filed its petition to terminate the parental rights of the mother and father based on the allegations of physical abuse. The juvenile court conducted an evidentiary hearing over several days to address the petition.

At the hearing, the forensic pediatrician and medical examiner testified about their observations and opinions concerning the children as set out above. The father and mother also testified. The father admitted that he had disciplined all three children by spanking them with objects or slapping them, resulting in bruises and marks on their bodies. According to the father, his mode of discipline was required by his religious beliefs, and he asserted that "(a)ny sound spanking will leave a mark." The father further admitted that he began spanking E. E. at least one month prior to his death; that he had previously broken E. E.'s femur due to slapping him; and that on the day when E. E. was taken to the hospital, he had spanked and slapped E. E., who he believed had exhibited "stubbornness." Finally, the father testified that he was in charge of discipline, but that on one occasion a few days before E. E.'s death, the mother had assisted him in spanking N. S. E. and G. A. E. with belts, leading to bruises and marks on their chests and backs.

Id. at 186-188.

The father argues on appeal that the juvenile court's "failure to hold *sua sponte* a competency hearing after considering [his] testimony was a violation of his right to due process."[2]

---

[2] It is undisputed that the father did not move for a competency hearing below.

We find no authority, and the father has cited none, requiring a Georgia court to order a competency hearing in a termination proceeding. It is true that in criminal proceedings "[a] trial court must conduct, *sua sponte*, a competency hearing when the information known to the trial court at the time of the trial or plea bargain is sufficient to raise a bona fide doubt regarding the defendant's competence." (Citations and punctuation omitted; emphasis in original.) *White v. State*, 202 Ga. App. 424, 425 (414 SE2d 328) (1992). But the termination of parental rights is a civil proceeding, see *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 609 (1) (629 SE2d 822) (2006), and the grounds for termination are enumerated in OCGA § 15-11-94.

Even if due process rights were somehow implicated here,

> [i]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

(Citation and punctuation omitted.) *In the Interest of C. W. D.*, 232 Ga. App. 200, 209 (5) (501 SE2d 232) (1998). Considering that the father's parental rights to his children are the interests affected, we evaluate the risk of an erroneous deprivation of that interest.

We hold that, here, the risk was minimal as the record reveals that the juvenile court took notice of the superior court's finding of mental incompetency, and, as a safeguard, appointed the father a guardian ad litem for purposes of the termination proceeding. The court's action here was appropriate given that it had discretion to provide protection for the interests of incompetent persons. See OCGA § 9-11-17 (c) (court shall appoint guardian ad litem for incompetent person as it deems proper for the protection of such person). Finally, there was no need for the juvenile court to conduct a separate competency hearing (thereby further delaying the foster parents' adoption of the children) when the superior court already had done so. Under these circumstances, the father's "due process rights were satisfied when balanced against the best interests of the children" including their need for permanence in a good home. See *In the Interest of C. W. D.*, supra, 232 Ga. App. at 209 (5).

The father cites *In the Interest of S. D. H.*, 287 Ga. App. 684 (652

SE2d 570) (2007), to support his argument that had he been "appropriately evaluated, he may have been able to show that through medication or counseling, he could be rehabilitated to properly care for his children." In that case, the juvenile court entered a disposition order finding that the child's deprivation could be cured by the mother's participation in psychiatric counseling, the maintenance of a medication regimen, and cooperation with home visits from a court appointed special advocate. Id. at 687. The present case is distinguishable, however, because the father failed to appeal the finding of deprivation and is therefore bound by that finding. See *In the Interest of R. S.*, 287 Ga. App. 228, 229 (1) (651 SE2d 156) (2007). And unlike the father in *In the Interest of S. D. H.*, the juvenile court here found that the father had physically, mentally, and emotionally abused the children.

Further, the father has shown no harm from the juvenile court's failure to order a competency hearing. Even if the juvenile court had ordered a hearing and found the father to be mentally incompetent, such a finding would only have weighed in favor of terminating his parental rights. Indeed, one factor in determining whether a child is without proper parental care or control is a medically verifiable deficiency of the parent's mental health to render the parent unable to provide adequately for the child. See OCGA § 15-11-94 (b) (4) (B) (i). In any event, the juvenile court concluded that the father's parental rights should be terminated based upon findings independent of the father's mental competency. The court found that:

> [n]either the mother nor the father could provide any plausible explanation as to how the [deceased child] had received twelve rib fractures, a broken foot, a broken hand, a broken leg, and a fractured skull . . . the father has been charged with felony murder and various cruelty to children charges in connection with the death of the [deceased child] . . . [, and] the children were subjected to ongoing physical, mental and emotional abuse while in the custody of their mother and father.

The father's arguments here are therefore without merit.
*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 31, 2008.

*Hollowell, Foster & Gepp, Jolanda E. Herring*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General,* for appellee.