A09A1359. IN THE INTEREST OF A. P., a child.
(684 SE2d 22)

ELLINGTON, Judge.

After a hearing, the Juvenile Court of Paulding County declared A. P. deprived based on its finding that A. P.'s stepfather had sexually abused her and that she did not receive appropriate treatment and protection following her disclosure of that abuse. The child's mother appeals, contending the trial court's factual findings were not supported by clear and convincing evidence. Finding no error, we affirm.

Georgia law defines a deprived child as, inter alia, "a child who . . . [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals[.]" OCGA § 15-11-2 (8) (A).

> On appeal from a finding that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Punctuation and footnote omitted.) *In the Interest of A. B.*, 267 Ga. App. 466, 466-467 (600 SE2d 409) (2004).

Viewed in the light most favorable to the juvenile court's judgment, the record shows the following. In June 2007, A. P.'s mother married A. P.'s stepfather, and she and her two children moved into the home of the stepfather's parents. Six months later, when A. P. was nine years old, her stepfather started waking her up around 6:30 in the morning to get her ready for school. As A. P. later disclosed, her stepfather, on many occasions, got into bed with her, wearing only a robe, and she felt his erect penis touching her vaginal area. A. P. eventually reported the abuse to a school counselor on February 27, 2008 during a "Good Touch, Bad Touch" class.

The school counselor and the principal notified the Paulding County Department of Family and Children Services and A. P.'s mother about A. P.'s disclosure of sexual abuse. A. P.'s mother

immediately took her for a forensic interview with a Department caseworker and a detective. The detective told A. P.'s mother that there was some indication that the stepfather had molested A. P. and that further investigation was required. The detective described the mother's reaction as being in shock and denial; she "just couldn't believe something of this magnitude could be taking place." Later that day, the detective interviewed A. P.'s stepfather, who admitted that he sometimes woke A. P. by getting in bed with her and rubbing her back. A. P.'s stepfather further acknowledged that he was not wearing any clothes under his robe when he went to wake her that morning, that he may have had an erect penis, and that it had "probably" touched A. P.'s vaginal area. The detective arrested A. P.'s stepfather for child molestation and sexual battery.

After A. P.'s stepfather's arrest, the Department required the mother to sign a safety plan. Under the plan, the mother agreed to take A. P. to therapy and to prevent her husband from having any contact with A. P., with the exception of supervised telephone conversations. In compliance with the safety plan, a licensed clinical psychologist evaluated A. P. During A. P.'s evaluation, she became very upset and started crying. A. P. told the psychologist that the school officials had "misunderstood" her and that the touching was an accident. A. P. complained that "everybody keeps talking to me and I don't want to talk." Further, A. P. was very concerned about the consequences of what she had disclosed, including that her stepfather had to leave the home, that her family had moved several times, and that if her stepfather could not come back home, then her family would have to move again. The psychologist opined that A. P. was trying to "present a happy front" and minimize the situation in order to "have it all go away." Moreover, the psychologist believed that A. P.'s statements sounded as if she was repeating something she had heard an adult say.

The same psychologist who evaluated A. P. also interviewed A. P.'s mother. During the interview, the mother said that she believed the touching was an accident and that A. P. "really didn't seem all that bothered by it." A. P.'s mother also acknowledged that her husband "probably" had an erection that morning when he went to wake A. P., because he usually had an erection in the morning, and that he was not wearing any underwear under his robe because he slept in the nude. Based on this interview, the psychologist concluded that the mother "was very motivated to have her husband return home," and, as a result, may have "under-reported the symptoms or any problems that the child may have been having." Moreover, the psychologist believed that the stepfather was using grooming tactics on A. P. in order to "bring down the boundaries between them," and that A. P.'s mother should be educated about sexual abuse and

grooming tactics in order to better protect A. P. After the evaluations, the psychologist told A. P.'s mother that she recommended that A. P. receive treatment by a therapist who specializes in sexually abused children, and that A. P.'s mother and the therapist receive the Department's summary of the forensic interview and investigative reports.

On September 16, 2008, the Department filed a deprivation petition, alleging that A. P.'s mother was minimizing the events that occurred, had failed to get A. P. appropriately treated, and had taken A. P. to see the stepfather's criminal defense attorney so that the attorney could speak with her about the abuse. The Department requested that the court allow the mother to retain custody only if all contact between the stepfather and A. P. ceased, the mother and any third parties refrained from discussing with A. P. whether any abuse occurred or whether the stepfather should be allowed to return home, and the mother fully disclosed to A. P.'s therapists the details of the abuse A. P. suffered.

After a hearing, the juvenile court found A. P. to be deprived based on the sexual abuse by her stepfather and the psychological pressures placed on A. P. by the adults in her life that caused her to want to "fix" the situation. The court ordered that A. P. remain in her mother's custody, subject to the following conditions.[1] A. P.'s mother must continue to prohibit all contact between A. P. and her stepfather, until A. P.'s stepfather completes sexual offender treatment with a certified therapist and both the stepfather's therapist and A. P.'s therapist agree that family counseling is appropriate. Additionally, A. P.'s mother must continue to have A. P. in counseling to address her abuse, and A. P.'s mother and third parties must not discuss her abuse or the pending case against A. P.'s stepfather with her.

On appeal, the mother challenges the juvenile court's ruling that A. P. was deprived. Specifically, the mother argues that the evidence presented at the deprivation hearing demanded a finding that she fully cooperated with the Department, complied with every requirement of the safety plan, and took all appropriate action to protect and care for A. P. In addition, the mother contends that, even if A. P. was deprived at one time, the evidence demanded a finding that the cause of the deprivation had been removed. As a result, the mother contends, there was not clear and convincing evidence that A. P. was deprived at the time of trial.

---

[1] See OCGA § 15-11-55 (a) (1) ("If the child is found to be a deprived child, the court may . . . [p]ermit the child to remain with . . . her parents . . . subject to conditions and limitations as the court prescribes.").

The record shows that much of the evidence adduced at the hearing did support the mother's position. For example, several of the Department's caseworkers and A. P.'s therapists testified that the mother was a "good mother" and that she was protecting A. P. and getting her the help she needed. The record further shows, as the mother contends, that she has complied with the safety plan and otherwise cooperated with the Department. The record also authorized the juvenile court to find by clear and convincing evidence, however, that, in A. P.'s eagerness to put this trauma behind her and reunite her family, the child is minimizing the abuse and masking the continuing emotional impact of the experience. Furthermore, the record authorized the juvenile court to find by clear and convincing evidence that the mother does not fully appreciate all that must still be done to protect and care for A. P., particularly in the event that A. P.'s stepfather returns to the home. As a result, we conclude that the juvenile court did not abuse its discretion in concluding that, at the time of the hearing, A. P. was deprived and in imposing carefully limited conditions on the mother's retention of custody pursuant to OCGA § 15-11-55 (a) (1). *In the Interest of A. B.*, 285 Ga. App. 288, 290 (645 SE2d 716) (2007) (affirming an order that adjudicated a child deprived, based on clear and convincing evidence that the mother failed to comply with safety plans regarding the child and the mother's two older children, and allowed the mother to retain custody subject to undergoing an alcohol and drug assessment and other conditions and supervision); see also *In the Interest of S. D. H.*, 287 Ga. App. 684, 688-689 (652 SE2d 570) (2007) (affirming an order that adjudicated a child deprived, based on clear and convincing evidence that the mother's increasingly severe mental health problems rendered her unable to properly care for the child, and provided that the deprivation could be cured if the mother continued psychiatric treatment and complied with other conditions). Accordingly, we affirm the juvenile court's judgment. *In the Interest of A. B.*, 285 Ga. App. at 290.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 7, 2009 —
RECONSIDERATION DENIED AUGUST 31, 2009.

*Meriwether & Tharp, Patrick L. Meriwether*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Jennifer Y. Zimmerman*, for appellee.