A07A1441. IN THE INTEREST OF R. S. et al., children.
(651 SE2d 156)

MILLER, Judge.

The biological mother of R. S. and I. R. S., minor children, appeals from an order of the juvenile court terminating her parental rights as to each child, citing insufficient evidence to support the order and claiming that she received ineffective assistance of counsel at the termination hearing. Discerning no error, we affirm.

In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the question is whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." *In the Interest of C. M.,* 275 Ga. App. 719 (621 SE2d 815) (2005). In making that determination, this Court reviews the evidence in a light most favorable to the lower court's judgments and we "neither weigh[ ] evidence nor determine[ ] the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation omitted.) Id. at 719-720.

So viewed, the evidence shows that R. S. and I. R. S. have been in the protective custody of the DeKalb County Department of Family and Children Services, acting on behalf of the Georgia Department of Human Resources (hereinafter "the Department") since April 9,

---

[16] See *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2002. The children were removed from their parents' home because of severe injuries to R. S., resulting from abuse by his father.[1] At the time of their removal, R. S. was approximately two months old and I. R. S. was approximately eighteen months old.

The Department's custody of the children was extended by four separate orders of the juvenile court, entered between June 19, 2002 and March 2, 2005. Each of these orders found R. S. and I. R. S. to be deprived, and none of the orders was appealed.

The Department's original case plan sought to reunify the children with their parents. That plan required both parents to complete psychological evaluations and obtain any counseling recommended as a result of the same; follow all recommendations made by a mental health professional treating them; attend and complete parenting classes; and use nonharmful and nonphysical discipline methods with their children.

On September 29, 2005, the Department filed a petition to terminate the parental rights of both the mother and the father, citing the parents' failure to maintain a meaningful and supportive bond with the children, their failure to provide for the children's care and support, and their failure to complete their case plan goals. The juvenile court granted that petition and on November 29, 2005 entered an order terminating the mother's parental rights.[2] This appeal followed.

1. The mother first argues that there was insufficient evidence to support the juvenile court's decision. We disagree.

The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94 (a). Such evidence must show that: (1) the child is deprived; (2) the deprivation results from a lack of proper parental care or control; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. See OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

The juvenile court entered at least four separate orders finding the children to be deprived, none of which was appealed. The mother is therefore bound by these findings of deprivation, and cannot now challenge the same. See *In the Interest of C. R. G.*, 272 Ga. App. 161, 164 (611 SE2d 784) (2005).

---

[1] As a result of R. S.'s injuries, the father was charged with two counts of aggravated battery and two counts of cruelty to children. On June 2, 2004, the father pled guilty to these charges and was sentenced to ten years imprisonment, to serve five years.

[2] The father voluntarily relinquished his parental rights on November 16, 2006, and the juvenile court entered an order terminating the father's parental rights on December 7, 2006.

When determining the second factor, whether a child's deprivation results from a lack of parental care and control, a court may consider, inter alia, a "medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional or moral condition or needs of the child." OCGA § 15-11-94 (b) (4) (B) (i). Additionally, in situations where a parent does not have custody of the children,

> the court must consider, among other things, whether that parent without justifiable cause has failed significantly for a year or more prior to the filing of the termination petition: "(i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent." OCGA § 15-11-94 (b) (4) (C).

*In the Interest of T. B.*, 267 Ga. App. 484, 488 (600 SE2d 432) (2004).

Here, the evidence demonstrates that the mother lacked the intellectual and emotional capacity to care for her children, particularly R. S. As a result of the physical abuse by his father, R. S. suffered brain damage, which in turn led to seizures and a stroke. He was subsequently diagnosed with cerebral palsy and a seizure disorder and is severely developmentally delayed. He also suffers from upper respiratory problems for which he receives breathing treatments. These conditions are treated by a number of doctors, and, at the time of the hearing, R. S. generally had between seven and nine doctors' appointments per week.

The psychological assessment of the mother showed that she had limited intellect, which prevented her from recognizing and addressing the children's needs, particularly the special needs of R. S. The psychologist who performed a parenting assessment of the mother informed the Department that, if the children were returned to the mother, there would need to be another adult present who could provide such care. Similarly, the caseworker assigned to the mother, the Department caseworker in charge of adoptive placement, and the children's court appointed special advocate all opined that the mother could not provide the virtually full-time care that R. S. requires and could not keep up with his numerous doctors' appointments.

Additionally, this belief was supported by the mother's denial about R. S.'s injuries and his current physical condition. At various times, the mother told the Department caseworkers that there was nothing wrong with R. S., that he was "fine," and that "nothing had

happened" to R. S. to cause him injury. Despite R. S.'s tender years, the mother stated that R. S. was "pretending," that his condition was not as severe as it appeared, and that R. S. was "just trying to get his dad into trouble." Moreover, despite the fact that a condition of the father's plea agreement was that he have no unsupervised contact with any child under the age of 18, the mother did not appear to accept that they could not live together once her husband was released from prison.

The evidence also showed that over the course of approximately three and a half years, the mother failed to comply with a crucial part of her case plan, which was to refrain from using physical discipline on her children. The mother's visits with the children had to be suspended after she slapped I. R. S. on the leg, grabbed her, and dragged the child by the arm. The caseworker expressed the opinion that the mother was incapable of meeting this goal, a conclusion supported by the mother's psychological assessment. That assessment noted that the mother had unrealistic expectations regarding her children's behavior, was likely to view her children as being responsible for meeting her needs, and had a "strong belief" in using physical methods of discipline.

Finally, the record showed that the mother had failed to create or maintain a meaningful parental bond with either of the children, and there was no evidence that the mother had paid any support for the children while they were in the Department's custody. Viewed in its entirety, therefore, the record supports the trial court's finding that the children's deprivation resulted from a lack of parental care and control. See, e.g., *In the Interest of A. K.*, 272 Ga. App. 429, 432 (612 SE2d 581) (2005) (affirming finding of lack of parental care and control where mother had low IQ and mental health issues that prevented her from being able to adequately care for special needs child).

We analyze the trial court's findings as to the third and fourth factors together, as "[t]he same evidence supporting a finding that the deprivation is likely to continue also supports a finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child." (Citation omitted.) *In the Interest of C. R. G.*, supra, 272 Ga. App. at 164. Here, the evidence of the mother's intellectual and mental limitations, which rendered her incapable of properly caring for her children, supported the trial court's findings as to both of these prerequisites. See id. (deprivation likely to continue, and children would suffer harm as a result, where mother "could not learn proper parenting skills"). Accord *In the Interest of B. J. H.*, 194 Ga. App. 282, 283 (390 SE2d 427) (1990).

Having found clear and convincing evidence of parental misconduct or inability, we now turn to the second step of the termination

analysis, which requires clear and convincing evidence that the termination of parental rights was in the best interests of the children, "considering [their] physical, mental, emotional, and moral condition and needs . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a). Factors to be considered in this analysis include the facts demonstrating the existence of parental misconduct or inability and whether the children have improved while in the Department's custody, see *In the Interest of C. R. G.*, supra, 272 Ga. App. at 164, as well as the children's "need for a stable home environment and the detrimental effects of prolonged foster care." (Footnote omitted.) *In the Interest of M. C. L.*, 251 Ga. App. 132, 136 (2) (553 SE2d 647) (2001).

The evidence showed that the children have done extremely well in foster care. In light of the children's need for a stable and permanent home, the fact that the children had thrived while in the Department's custody, and the mother's inability either to learn the necessary parenting skills or to give the care required by a special needs child such as R. S., the trial court's finding that the termination of parental rights was in the best interests of the children is supported by clear and convincing evidence.

2. The mother next asserts that she received ineffective assistance of counsel at the termination hearing, based on the fact that her lawyer failed to object to inadmissible testimony. The only specific testimony cited by the mother as objectionable was the caseworker's testimony regarding the mother's mental capacity, which she claims was inadmissible in the absence of supporting documentary evidence. The mother, however, cites to no case law that supports this assertion, nor does she offer any explanation as to why this testimony was objectionable. This enumeration of error, therefore, is deemed abandoned. See *In the Interest of C. B.*, 258 Ga. App. 143, 147 (1) (574 SE2d 339) (2002); Court of Appeals Rule 25 (c).

In light of the foregoing, we affirm the juvenile court's order terminating the parental rights of the biological mother as to both R. S. and I. R. S.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 10, 2007.

*Phyllis R. Williams*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Cynthia Roberts-Emory*, for appellee.