659 S.E.2d 800 (2008)
In the Interest of M.L. et al., children.
No. A08A0880.
Court of Appeals of Georgia.
March 21, 2008.
*801 Lawrence W. Daniel, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Sanders Buie Deen, Asst. Atty. Gen., for Appellee.
BLACKBURN, Presiding Judge.
Following the termination of her parental rights to M.L., D.W., T.S., and R.S., the natural mother of these children appeals, challenging the sufficiency of the evidence. We hold that the mother's failure to comply with the reunification case plan, to bond with the children, or to support the children authorized the juvenile court's decision to terminate her parental rights. Accordingly, we affirm.
In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the question is whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. In making that determination, this Court reviews the evidence in a light most favorable to the lower court's judgments and we neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of R.S.[1]
So viewed, the evidence shows that in September 2004, then nine-month-old D.W. was taken into the Department of Family and Children Services (DFACS) custody based on the deprivation finding (consented to by the child's mother) that the mother, who was unmarried, had left D.W. in a Cobb County home without power, food, or furniture, while she performed exotic dances over the weekend in Las Vegas, Nevada. Four months later in January 2005, the mother's other two children (three-year-old R.S. and two-year-old T.S.) were also taken into DFACS custody based on the deprivation finding (again consented to by the mother) that the mother, who was now homeless, had left the children unsupervised, during which time one of the children had ingested chemicals from a microscope kit.
In January 2006, the mother stipulated in a continuing custody order that the conditions of deprivation continued to exist, particularly since she had not complied with the reunification case plan to obtain stable housing or employment. When the mother gave birth to M.L. in December 2006, DFACS obtained an emergency deprivation order placing the new baby in its custody based on the mother's continued noncompliance with the case plan and on her choice to live with an abusive boyfriend.
*802 In January 2007, DFACS petitioned the court to terminate the mother's parental rights to the four children (each of whom had a different father), alleging that she continued to fail to comply with the case plan, that she had failed to provide for the care and support of the children, that she had not bonded with the children, and that she was living in an abusive environment. Following an evidentiary hearing in which the mother admitted that she had not visited the children in three months, the juvenile court terminated her parental rights, giving rise to this appeal.
Per OCGA § 15-11-94, a juvenile court follows a two-step process in termination of parental rights cases. "First, the trial court determines whether there is present clear and convincing evidence of parental misconduct or inability." (Punctuation omitted.) R.S., supra, 287 Ga.App. at 229(1), 651 S.E.2d 156. See OCGA § 15-11-94(a). Second, the court considers whether the termination of parental rights is in the best interests of the children. In the Interest of C.R.G.[2] See OCGA § 15-11-94(a).
With regard to the first step as to parental misconduct or inability, the court must determine whether clear and convincing evidence shows the following four factors: (1) the children are deprived; (2) the deprivation results from a lack of proper parental care or control; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. See OCGA § 15-11-94(b)(4)(A)(i)-(iv); R.S., supra, 287 Ga.App. at 229, 651 S.E.2d 156. Here, the mother challenges only the court's findings on the first three factors; she does not challenge the finding on the fourth factor, nor does she challenge the court's finding that termination was in the best interests of the children. We therefore restrict our analysis to a consideration of the challenged findings.
1. The children are deprived. There is clear and convincing evidence in the record that the children (now in the custody of DFACS) would be deprived if they were living with the mother. At the time of the filing of the termination petition, the mother had no stable housing nor any employment, even though such was required by her case plan. She had paid no money to DFACS to assist in supporting the children or in providing for their care while in the custody of DFACS. She was living with a boyfriend who abused her, and she refused to leave that boyfriend despite counseling from professionals to do so. Not until just days before the termination hearing did she leave the boyfriend and move into her parents' home, but she conceded at the hearing that she had left her possessions at the boyfriend's residence and that she hoped to return to live with him and possibly marry him. She had not bonded with the children; in fact, for the three months prior to the termination hearing, she had not visited any of the children, despite her access to public transportation. Indeed, evidence showed that the mother spent time with her boyfriend instead of making scheduled visits to her children.
This evidence sufficed to show that if placed back in the mother's care, the children would have been deprived.
2. The children's deprivation results from lack of proper parental care or control. With regard to the second factor of whether the deprivation results from lack of proper parental care or control, the juvenile court makes special considerations when the children (as here) have not been in the custody of the parent. Specifically,
the court must consider, among other things, whether that parent without justifiable cause has failed significantly for a year or more prior to the filing of the termination petition: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent. OCGA § 15-11-94(b)(4)(C).
(Punctuation omitted.) R.S., supra, 287 Ga. App. at 230(1), 651 S.E.2d 156.
Here, evidence supported the court's findings that the mother failed in all three factors. *803 Not only did the mother (during the year prior to the filing of the termination petition) fail to obtain stable housing or employment as required by her case plan, but her housing with her parents obtained only days before the termination hearing was apparently temporary since she hoped to return to live with and possibly marry her abusive boyfriend (at whose residence her possessions remained). She had obtained no stable job in 2006 or 2007, and had not yet begun her new job at the time of the termination hearing. Further, she had failed to give DFACS any money to support her children. See In the Interest of A.R.A.S.[3] ("Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income").
During that same year prior to the filing of the petition, testimony showed that she had failed to develop a meaningful bond with the children and in fact often preferred spending time with her boyfriends over spending time with her children. She even refused to leave an abusive boyfriend despite professional counseling that she should leave him for her sake and the sake of her children. For the three months preceding the termination hearing, she had failed to visit any of her children, even though inexpensive public transportation was available to do so; she could not explain her lack of effort to see her children, but she did acknowledge it harmed her children to have no such contact. Consistent with this lack of effort, the mother missed five of her seven citizen review panels and could only explain her absence as to one of them. Such failures to bond with the children, to support the children, or to comply with the case plan justify a finding that lack of proper parental care or control caused the deprivation. See R.S., supra, 287 Ga.App. at 231, 651 S.E.2d 156; In the Interest of M.C.;[4]A.R.A.S., supra, 278 Ga.App. at 613-614(2)(b), (c), (d), 629 S.E.2d 822.
3. The cause of the deprivation is likely to continue. Evidence supported the juvenile court's finding that the deprivation was likely to continue. "Notably, a juvenile court may consider past conduct of a parent in deciding whether deprivation is likely to continue." (Punctuation omitted.) In the Interest of R.N.H.[5] Thus, the evidence of the mother's failure to comply with her case plan goals over the years, her failure to visit her children in the three months preceding the termination hearing, and her consistent failure to support the children sustained a finding that the deprivation would likely continue. Id. Her decision to reside with her parents, made only days before the termination hearing, combined with her newly obtaining employment there, hardly required the court to find otherwise. While this evidence reflected possible improvement (which itself was doubtful since she had not yet worked her first day at the job and since she expressed a desire to return to live with her abusive boyfriend), recent improvements "do not establish that the parent is capable of maintaining the progress." (Punctuation omitted.) In the Interest of D.L.S.[6] Indeed, "the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact. Ultimately, the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Punctuation omitted.) R.N.H., supra, 286 Ga.App. at 742(1)(c), 650 S.E.2d 397. We discern no error in the juvenile court's assigning little weight to the mother's assertions of sudden parental fitness and in determining that the deprivation was likely to continue. Id.
As the only findings challenged by the mother were all supported by evidence that a trier of fact could have found clear and convincing, we must affirm.
Judgment affirmed.
MILLER and ELLINGTON, JJ., concur.
NOTES
[1] In the Interest of R.S., 287 Ga.App. 228, 651 S.E.2d 156 (2007).
[2] In the Interest of C.R.G., 272 Ga.App. 161, 165, 611 S.E.2d 784 (2005).
[3] In the Interest of A.R.A.S., 278 Ga.App. 608, 613(2)(c), 629 S.E.2d 822 (2006).
[4] In the Interest of M.C., 287 Ga.App. 766, 769(1)(c), 653 S.E.2d 120 (2007).
[5] In the Interest of R.N.H., 286 Ga.App. 737, 741(1)(c), 650 S.E.2d 397 (2007).
[6] In the Interest of D.L.S., 271 Ga.App. 311, 314(1)(c), 609 S.E.2d 666 (2005).