A09A0159. IN THE INTEREST OF S. N. H., a child.
(685 SE2d 290)

MIKELL, Judge.

Appellant K. H., the biological mother of S. N. H., appeals from the orders terminating her parental rights to the child and denying her amended motion for new trial. Appellant challenges the sufficiency of the evidence to support the termination. She also contends that her trial counsel rendered ineffective assistance and that the juvenile court erred in taking judicial notice of matters in prior deprivation proceedings. Finding no error, we affirm.

> On appeal from an order terminating parental rights, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to

---

[5] Id., citing *Cutter*, supra at 890 (2).

the trial court's factfinding and affirm unless the appellate standard is not met.[1]

Viewed in the light most favorable to the termination order, the record shows that S. N. H. was born on November 16, 2005, and appellant was evicted from her home in April 2006, when S. N. H. was five months old. Because appellant was homeless and unable to care for the child, she sought assistance from the Gwinnett County Department of Family and Children Services ("DFACS"). DFACS provided temporary shelter for appellant and S. N. H., but when offered additional housing, appellant declined the offer. In July, appellant returned to DFACS to give up the child, stating that she was "tired of dealing" with the situation and "wanted her life back."

DFACS filed a deprivation petition on July 17, 2006, and the juvenile court held an emergency hearing. In an order entered on December 13, nunc pro tunc to August 1, 2006, the juvenile court found that appellant "behaved very belligerently and disrespectfully and displayed physical aggressiveness and posturing as the [c]ourt attempted to inform her of her rights." Appellant resisted arrest for criminal contempt, attempted to bite a female deputy, took off her shirt, wrapped it around her neck, and attempted to hang herself. She informed another deputy that she would shoot him if she had a gun. The court found that the child was deprived because appellant suffered from a deficiency of her physical, mental, emotional, or moral condition of such a nature as to render her unable to provide for the child's needs.[2] The court also found that "[t]he child would be at significant risk if she were in the custody of this suicidal and threatening mother." The court placed the child in the temporary custody of DFACS but stated that the permanency plan was reunification.

The reunification plan required appellant to maintain stable housing and stable income; attend anger management and parenting classes and counseling and drug and alcohol treatment, as recommended by The Road to Recovery, Inc. ("Road to Recovery"); attend budgeting classes; secure a transportation plan; and obtain a GED. Appellant, however, substantially failed to comply with the plan. She was terminated from the Road to Recovery program due to her belligerent behavior, lost her job, smoked marijuana daily, and was evicted from her home. As a result, in an order dated May 31, 2007, the juvenile court found her in contempt of court. DFACS then filed a nonreunification case plan.

---

[1] (Citation and punctuation omitted.) *In the Interest of J. A.*, 286 Ga. App. 704 (649 SE2d 882) (2007).

[2] See OCGA §§ 15-11-2 (8) (A); 15-11-94 (b) (4) (A) (i), (B) (i).

On June 12, 2007, appellant filed a motion to modify her case plan, alleging that she had completed parenting classes, was enrolled in alcohol and drug treatment classes, and had enjoyed several successful supervised visits with the child. The court conducted a hearing on that date, denying appellant's motion and noting that although she claimed to be sober, she opted not to take a drug screen that day. The court ruled that the permanency plan was termination of parental rights and adoption. DFACS filed a petition for termination of parental rights and a protective order on October 4, 2007.

The termination hearing was held on February 12, 2008. Dr. Michael J. Runo, a psychologist who performed a parental fitness evaluation on appellant pursuant to the court's order,[3] diagnosed her with a significant mood disorder, cannabis abuse, and a personality disorder with paranoid and histrionic traits. Runo testified that appellant was "very hostile and has a lot of animosity towards anyone who is attempting to deliver . . . treatment." According to Runo, appellant refused to accept responsibility for the removal of her child, stopped taking medication to treat her mental disorders when she was 18,[4] and was "behaviorally . . . out of control" without medication. Runo expressed "concerns about her amenability to treatment" and her "willingness to stay off marijuana." Runo concluded that without treatment, appellant's volatility would adversely impact her child. Runo was "very skeptical based on her track record" that she would be able to accomplish a goal of reunification with the child, and he opined that appellant was unfit to care for the child without treatment.

Dr. Margaret Garvin, a psychotherapist and appellant's expert witness,[5] testified that she treated appellant from February through July 2007. According to Garvin, appellant was "primarily compliant" with therapy and completed treatment for anger management, alcohol and drug therapy, and parenting skills. Garvin observed a visit between appellant and S. N. H. and testified that appellant was "very loving and kind" to the child; that the child was "very open and receptive" to appellant; and that mother and child appeared to have a "strong bond." Although Garvin agreed with Runo that appellant needed medication and psychiatric treatment, Garvin believed that appellant would be able to parent her child if she followed the recommended treatment. Garvin testified, however, that appellant stated that she could not afford such treatment. Upon questioning by the court, Garvin testified that medication and

---

[3] Although Runo's report was marked as an exhibit at the hearing, it was not tendered into evidence.

[4] Appellant was 24 years old on the date of the termination hearing.

[5] The court granted appellant's motion for funds to retain this expert witness.

psychiatric treatment were available to appellant on a sliding scale, but she had not availed herself of those services, even though Garvin had recommended them almost a year prior to the termination hearing.

Tara Thomas testified that she was the DFACS case manager assigned to appellant's case during the time that the case plan called for reunification. Thomas testified that the goals of the plan were stable housing, stable income, anger management, parenting classes, budgeting class, and getting a GED; that appellant had not come forward with proof of compliance with any of the goals except for a proposed budget; and that appellant had not paid any child support. However, the visits Thomas observed between appellant and the child appeared to be "meaningful and purposeful." Thomas also testified that appellant had not asked for DFACS's assistance in obtaining medication or treatment and had not inquired about the availability of sliding-scale services. Moreover, Thomas was unable to conduct any home visits because appellant "would not allow it."

Thomas testified that S. N. H. has "a very tight bond" with the foster mother, who plans to adopt the child, and that it would be "devastating" to the child to be removed from that home. Based on appellant's disruptive behavior, inability to maintain housing and employment, and her mental status, Thomas did not believe that appellant was capable of providing structure and a nurturing environment for the child.

Appellant testified that she had taken several steps to provide a suitable home for S. N. H. Her attorney tendered into evidence a copy of two paycheck stubs from Pizza Hut; a copy of her lease, showing that she had rented an apartment on February 4, two weeks before the hearing; evidence that she had secured utility service; and certificates of completion issued by Garvin on July 6, 2007, for an anger management program, an alcohol and drug treatment program, and a parenting skills class. Appellant testified that she earns $1,600 per month, but except for a part-time job for which she was paid "under the table," she had never held a job for more than a couple of months.

Appellant admitted that she smoked marijuana; that she needs help with her drug problem and her anger; that she needs medication to control her anger but that the lack of it would not prevent her from taking care of her child; and that she has not obtained medication because she cannot afford it. Appellant also admitted, however, that she had no idea what the medication costs and that she pays to have her hair and nails done. Appellant testified that she would be willing to "sacrifice" her hair and nails if she had to do so. Appellant also admitted telling Road to Recovery that she felt like killing herself; that they would "regret it" if she did not get her baby

back; and that appellant would get the child back "legally or illegally." Road to Recovery had to call the police when appellant refused to leave.

The juvenile court ruled from the bench that it would grant DFACS's petition to terminate appellant's parental rights. The court remarked that although appellant might be able to provide financially for the child's basic needs, appellant still had mental health needs that had not been addressed, and the child had bonded with the only home she had ever really known. The court found that DFACS had sustained its burden of proof by clear and convincing evidence.

The juvenile court entered a termination order in March 2008, nunc pro tunc to February 12, 2008.[6] The court appointed new counsel for appellant, who filed a motion for new trial, alleging, inter alia, ineffective assistance of trial counsel. At the hearing held on the motion, appellant's new attorney exhaustively questioned trial counsel as to her actions and motives. The juvenile court denied the motion for new trial, and appellant appeals.

1. A termination of parental rights case involves a two-step analysis.[7] First, the juvenile court must find parental misconduct or inability, based on clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[8] If these four factors are satisfied, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[9] Applying the four factors set forth in OCGA § 15-11-94 (b) (4) (A), we find sufficient evidence to support the juvenile court's finding of parental misconduct or inability.

(a) *The child is deprived.* Because appellant did not appeal the juvenile court's order finding S. N. H. deprived, and because the evidence showed that the conditions upon which this finding was based still existed at the time of the termination hearing, appellant was bound by this finding.[10]

---

[6] The court order issued an amended order on June 17, 2008, nunc pro tunc to February 12, 2008, to correct the statement in the March order that Runo's report had been entered into evidence.

[7] OCGA § 15-11-94 (a).

[8] OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

[9] OCGA § 15-11-94 (a).

[10] See *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1), n. 6 (645 SE2d 363)

(b) *Lack of proper parental care or control caused the deprivation*. One ground for seeking termination is "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child."[11] In this case, the juvenile court properly found the existence of this factor. Runo diagnosed appellant with mood and personality disorders and testified that she needs medication to control her anger. Runo testified that appellant's volatility would negatively impact her child and that absent treatment, appellant was unfit to care for the child. In addition, appellant had not obtained medication despite a recommendation from her own therapist, Garvin. Appellant claimed that she could not afford medication, even though she paid to have her hair and nails done. Appellant failed to avail herself of services that were available on a sliding-scale basis. The juvenile court's finding as to this factor is supported by clear and convincing evidence.[12]

When the child is not in the parent's custody, the court also is required to consider whether that parent, without justifiable cause, has failed significantly for a year or more prior to the filing of the termination petition: "(i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child . . . ; and (iii) To comply with a court ordered plan designed to reunite the child with the parent."[13] Here, although the evidence showed that appellant had meaningful visits with the child, she did not pay child support. Although she claimed to have given the child gifts, her caseworker testified that she had never witnessed appellant doing so. "Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income."[14] Nor did appellant comply with all of the goals of the court-ordered reunification plan. Specifically, she did not demonstrate the ability to maintain stable housing and stable income. Appellant had only recently leased an apartment, and she denied DFACS access to her home to determine its suitability. Appellant had

---

(2007); *In the Interest of A. K.*, 272 Ga. App. 429, 434 (1) (a) (612 SE2d 581) (2005).

[11] OCGA § 15-11-94 (b) (4) (B) (i).

[12] See *In the Interest of H. E. M. O.*, 281 Ga. App. 281, 285 (1) (b) (636 SE2d 47) (2006) (mother suffered from mental illnesses and a psychologist concluded that her prognosis was poor without inpatient treatment, to which she was resistant); *In the Interest of B. B.*, 268 Ga. App. 858, 860 (3) (a) (603 SE2d 333) (2004) (mother's mental illness coupled with refusal to seek treatment showed parental inability).

[13] OCGA § 15-11-94 (b) (4) (C).

[14] (Citations omitted.) *In the Interest of A. R. A. S.*, 278 Ga. App. 608, 613 (2) (c) (629 SE2d 822) (2006).

only recently obtained a job at Pizza Hut and had never held a job for more than a few months, except for a job with a moving company for which she was paid "under the table."

We conclude that DFACS demonstrated by clear and convincing evidence that lack of proper parental care or control caused the child's deprivation.

(c) *The cause of the child's deprivation is likely to continue.* Appellant's failure to stabilize her volatility, and her continued inability to maintain stable housing and stable employment, authorized the juvenile court to find that the cause of the deprivation is likely to continue.[15] While we commend the mother's efforts to address her problems, "the juvenile court, not this [C]ourt, determines whether a parent's conduct warrants hope of rehabilitation, and it also judges the credibility of the mother's good intentions."[16] Moreover, "recent improvements do not establish that the parent is capable of maintaining the progress."[17] Evidence of appellant's failure to seek medication to address her anger control problem, and the impact that problem would have on her child supports the juvenile court's finding that the cause of the deprivation is likely to continue or will not likely be remedied.

(d) *Continued deprivation is likely to cause serious harm to the child.* The same circumstances that authorized the juvenile court's determination that the child was deprived due to lack of proper parental control or inability and that such deprivation was likely to continue provided clear and convincing evidentiary support for the conclusion that such "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."[18] As set forth above, expert testimony showed that the mother's volatile, unstable behavior presents a danger to the child, and her behavior is likely to continue absent medication, to which she apparently is averse. Appellant has failed to maintain steady employment or stable housing. In addition, "it is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[19] At the time of the

---

[15] See *In the Interest of O. M. J.*, 297 Ga. App. 20, 27 (2) (b) (676 SE2d 421) (2009); *In the Interest of H. E. M. O.*, supra at 287 (1) (c) (mother's resistance to mental health treatment and failure to maintain stable housing or employment, in addition to other factors, authorized finding that the cause of the deprivation is likely to continue).

[16] (Punctuation and footnote omitted.) *In the Interest of K. A. B.*, 285 Ga. App. 537, 541 (1) (b) (646 SE2d 736) (2007).

[17] (Punctuation omitted.) *In the Interest of M. L.*, 290 Ga. App. 437, 441 (3) (659 SE2d 800) (2008), citing *In the Interest of D. L. S.*, 271 Ga. App. 311, 314 (1) (c) (609 SE2d 666) (2005).

[18] OCGA § 15-11-94 (b) (4) (A) (iv); *In the Interest of H. E. M. O.*, supra at 287 (1) (d).

[19] (Citation and punctuation omitted.) *In the Interest of A. R. A. S.*, supra at 615 (2) (d).

termination hearing, S. N. H. had been in DFACS's custody for all but eight of her twenty-seven months of life. DFACS offered evidence that the child was thriving in her current placement and that it would be devastating to the child to be removed from her foster mother. The juvenile court was authorized to consider the adverse effects of prolonged foster care and to conclude that the child's continued deprivation was likely to cause her serious harm.[20]

2. *Best interest of the child.* After finding clear and convincing evidence of parental misconduct or inability, the juvenile court must then determine whether termination of parental rights is in the child's best interest, "after considering the physical, mental, emotional, and moral condition and needs of the child, . . . including the need for a secure and stable home."[21] Given the mother's mental instability and aversion to medication, as well as the close bond that the child has developed with her foster mother, and the foster mother's desire to adopt the child, the juvenile court did not abuse its discretion in finding that termination of appellant's parental rights was in the child's best interest.[22]

3. Appellant argues that the juvenile court erred by accepting a stipulation from the parties that all previous evidence — and not specific facts tendered at prior hearings — would come into evidence, even though those hearings did not involve the termination of parental rights. Appellant mischaracterizes the law as well as what occurred at the hearing, where the juvenile court simply asked the parties' attorneys if they would stipulate to the court taking judicial notice of the evidence, exhibits, testimony, and court orders in the underlying deprivation proceeding. A court may take "judicial cognizance of records on file in its own court."[23] In the case at bar, the judge announced her intention to take judicial notice of the prior proceedings; appellant was given an opportunity to be heard on whether judicial notice should be taken; and her attorney stipulated to the court taking judicial notice. Thus, the juvenile court did not err in taking judicial notice of the evidence, exhibits, testimony, and orders in the underlying deprivation proceeding in the same court.

4. Appellant next argues that the juvenile court abused its discretion and committed reversible error by taking judicial notice of previous unappealed court orders from earlier hearings when the juvenile court knew that appellant's attorney never informed her of

---

[20] *In the Interest of T. W. O.*, 283 Ga. App. 771, 777 (1) (a) (iv) (643 SE2d 255) (2007).

[21] OCGA § 15-11-94 (a).

[22] *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).

[23] (Citations and punctuation omitted.) *In the Interest of A. A.*, 293 Ga. App. 471, 475 (3) (667 SE2d 641) (2008).

her appeal rights. Appellant points out that because a court may take judicial notice of records in the same court, where appeals are not taken from orders in those cases, a party is bound by the determinations in later proceedings.[24] Appellant argues that this is an unfair result — particularly in deprivation and termination proceedings — where the parent is not informed of her appeal rights. Appellant contends that failing to inform a parent in a deprivation proceeding of her appeal rights and then taking judicial notice of the proceedings in a subsequent termination hearing violates her due process right to confrontation. Appellant cites *In the Interest of C. W. D.*,[25] in which we recognized that a parent's right to due process in termination cases includes the right to confront the witnesses who testify against her.[26] But appellant has not identified any witness whom she was unable to confront and therefore has not demonstrated harm. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful."[27]

5. Appellant next alleges six instances of ineffective assistance of trial counsel. "While termination of parental rights cases are more civil in nature than criminal, parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled," including the right to effective representation.[28] In order to prevail on an ineffective assistance claim, appellant must show that her trial counsel's performance was deficient and that the deficient performance prejudiced her.[29]

> To meet the first prong of this test, [appellant] must overcome the strong presumption that counsel's performance fell within a wide range of professional conduct and that counsel's decisions were not made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires [appellant] to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different.[30]

---

[24] See id.

[25] 232 Ga. App. 200 (501 SE2d 232) (1998).

[26] Id. at 209 (5).

[27] (Punctuation and footnote omitted.) *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008).

[28] (Citations and punctuation omitted.) *In the Interest of A. H. P.*, 232 Ga. App. 330, 334 (2) (500 SE2d 418) (1998).

[29] Id.

[30] (Citation and punctuation omitted.) Id. at 334-335 (2). See also *Miller v. State*, 285 Ga. 285, 286-287 (676 SE2d 173) (2009).

Failure to satisfy either prong of this test is fatal to an ineffective assistance claim, and we need not address the issue of deficient performance if appellant has not borne her burden of demonstrating prejudice.[31] Finally, a juvenile court's finding that a parent has been afforded effective assistance of counsel will be affirmed on appeal unless that finding is clearly erroneous.[32]

(a) Appellant first argues that trial counsel was ineffective for stipulating to the evidence that had been admitted in the prior deprivation proceedings. At the hearing, newly appointed counsel argued that trial counsel should have objected on the ground that the orders in the file were not the best evidence and should have demanded that DFACS present certified copies of the evidence in the deprivation proceedings.[33] This argument lacks merit. First, the court was permitted to take judicial notice of the orders.[34] Second, even if appellant could show that trial counsel performed deficiently in this regard, she has not demonstrated a reasonable probability that the outcome of the termination proceeding would have been different had DFACS been required to present certified copies of the evidence in question.

(b) Appellant next argues that trial counsel was ineffective in failing to instruct her client of her right to appeal the deprivation orders. Trial counsel testified repeatedly at the new trial hearing that she found no grounds upon which to appeal the orders. Although appellant claims that one of the court's unappealed orders did not comply with OCGA § 15-11-58 (h), she does not show a reasonable probability that an appeal would have been successful and, most significantly, would have altered the outcome of her current termination proceeding. As we held in Division 1 (a), DFACS presented evidence that the child was deprived at the time of the termination hearing and did not simply rely on the court's prior orders. The juvenile court's finding that counsel was not ineffective in this regard is not clearly erroneous.

(c) Appellant next maintains that trial counsel was ineffective in failing to introduce evidence that during a hearing on September 17, 2007, appellant had taken a drug test, which was negative. This assertion lacks factual support in the record. During the termination hearing, trial counsel specifically directed the court's attention to the fact that the drug screen appellant took in September 2007 was negative. Finally, at the new trial hearing, the court stated that it

---

[31] *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

[32] See id.

[33] See *In the Interest of C. W. D.*, supra at 204-205 (2).

[34] See *In the Interest of S. H. P.*, 243 Ga. App. 720, 722 (1) (a) (534 SE2d 161) (2000).

considered all of the evidence before rendering its ruling. Accordingly, this allegation of ineffectiveness is meritless.

(d) Appellant contends that trial counsel was ineffective in failing to object when the guardian ad litem asked Runo whether, in his medical opinion, appellant was unfit to care for S. N. H. on the day of the hearing. We disagree. That was the last question asked by the guardian ad litem, and appellant's trial counsel quickly asked Runo whether appellant's ability to parent could change if she were to receive therapy. Trial counsel was able to get Runo to admit that it was "possible" that appellant's outlook could change. "A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight."[35] Given trial counsel's thorough cross-examination of Runo and the fact that she objected to a similar question asked by the guardian, appellant has not shown that trial counsel was ineffective for failing to object to the question concerning parental fitness.

(e) Citing *In the Interest of C. W. D.*,[36] appellant argues generally that trial counsel was ineffective in failing to object to Runo's opinions, which violated her due process right to confrontation, since his opinions were based on witness statements and documents that were not introduced into evidence. Runo's testimony reveals, however, that he reached his conclusions regarding appellant primarily based on his own personal observations of her during two interviews. Moreover, he specifically declined to comment as to whether appellant's parental rights should be terminated. Thus, there was no due process violation in this regard, and this claim of ineffectiveness fails.

(f) Appellant contends that trial counsel was ineffective in failing to file a motion for a pretrial *Daubert*[37] hearing under OCGA § 24-9-67.1 (d) to limit Runo's testimony. Again, we disagree.

OCGA § 24-9-67.1 (d) permits a civil litigant to file a motion requesting a pretrial hearing to determine whether a witness qualifies as an expert and whether his or her testimony is based on sufficient facts that will be admitted at trial, among other criteria. Pretermitting whether this statute applies in cases concerning termination of parental rights, there was no showing of prejudice in the case at bar from failure to hold a pretrial hearing because DFACS established Runo's qualifications at the termination hearing. Runo testified that he was a licensed psychologist who had been perform-

---

[35] (Citation omitted.) *Hooks v. State*, 280 Ga. 164, 165 (3) (626 SE2d 114) (2006).

[36] See supra at 209 (5).

[37] *Daubert v. Merrill Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

ing court-ordered parental fitness custody evaluations for over 15 years. Runo explained his methodology and testified that it was a generally accepted method for performing such evaluations. Runo's opinions were based on personal interviews with appellant. Appellant has not shown that Runo's testimony would have been excluded under OCGA § 24-9-67.1 and has therefore failed to show that trial counsel was ineffective in this regard.

In sum, appellant has failed to show that, but for trial counsel's alleged errors, there is a reasonable probability that her parental rights would not have been terminated. Furthermore, clear and convincing evidence supports the termination order. It follows that the trial court did not err in denying appellant's motion for new trial.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 18, 2009 —
RECONSIDERATION DENIED OCTOBER 7, 2009 — ▮▮▮▮▮▮

*Nathan A. Hayes*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, John P. Cheeley*, for appellee.